Fred A. HAGUE, Plaintiff-Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

No. 76–2182.

United States Court of Appeals, Fifth Circuit.

April 13, 1978.

Rehearing Denied May 9, 1978.

Charles T. Sykes, Jr., Gulfport, Miss., for plaintiff-appellant.

Ben H. Stone, Robert C. Galloway, Gulfport, Miss., for defendant-appellee.

Eldon L. Bolton, Jr., Gulfport, Miss., for other interested parties.

Bobby G. O'Barr, Biloxi, Miss., for Nat'l Fire & Marine Ins. Co., et al.

264

Before CLARK and GEE, Circuit Judges, and LYNNE *, District Judge.

CHARLES CLARK, Circuit Judge:

Fred Hague obtained a default judgment against James Watkins in 1973 for injuries that Hague had suffered in 1970 when a taxi driven by Watkins collided with Hague's automobile. In an attempt to realize on the judgment, Hague initiated this action to garnish an insurance policy issued to Watkins' employer, Yellow Cab and Car Rental of Gulfport, Inc. The parties waived a trial and agreed that the trial court should consider the case on the record and depositions alone. The district court ruled that Liberty Mutual was not indebted to Watkins because the conditions precedent to liability under the policy had not been met. Hague has appealed from that ruling. We affirm.

The district court's opinion mentioned two conditions precedent without indicating whether its decision was based upon only one or both of the requirements. As to one condition—that the taxi must have been insured under a policy issued by Liberty Mutual—the district court concluded that the "identity of the particular cab involved in this accident was never revealed." The difficulty in identifying the particular cab resulted from the two-year delay in notifying the insurance company of the accident. That delay relates to the second condition precedent—the requirement in the insurance contract that the company be notified "as soon as practicable" of any accident involving a vehicle covered by the policy.

■ Hague contends that the district court erred in its consideration of both conditions. Regarding the first, the identity of the taxi, Hague argues that the deposition testimony shows that from the day of the accident the taxi was identified as one that was insured by Liberty Mutual. Because the case was submitted to the district court in the form of documents and transcripts, Hague's burden of showing that the district court's findings of fact were "clearly erroneous" is somewhat lessened. See, e. g.,

McKensie v. Sea Land Service, Inc., 551 F.2d 91, 92 (5th Cir. 1977); Burston v. Caldwell, 506 F.2d 24, 26–7 (5th Cir. 1975); Volkswagen of America, Inc. v. Jahre, 472 F.2d 557, 558–59 (5th Cir. 1973). Nevertheless, the clearly erroneous standard still applies and it is our duty "to study the entire record thoroughly and to determine whether we are 'left with the definite and firm conviction that a mistake has been committed.'" Volkswagen of America, Inc. v. Jahre, 472 F.2d at 559. See also Fed.R. Civ.P. 52(a).

■ After reviewing the entire record we do not have a definite and firm conviction that the district court committed a mistake. Several people testified that upon receiving notification of the suit in 1972 they were able to identify the taxi and to discover that it was insured by Liberty. The same witnesses, and others, testified that they had been unable to find any record in the files that would indicate the identity of the taxi involved. The police report of the accident did not identify the taxi by vehicle identification number; it only listed the license plate number. Watkins, the driver, recalled that the taxi had a number different from that listed on the police report. With such a conflict between testimonial and documentary evidence, we cannot say that the district court clearly erred when it concluded that the identity of the taxi had not been proved. As we said in Skidmore v. Grueninger, 506 F.2d 716, 724 (5th Cir. 1975), "where the conclusions of the trial judge may reasonably be inferred from the record, such conclusions should not be disturbed on appeal. This is true even though conflicting inferences of equal reasonableness may be drawn from a review of the same body of evidence. . . . Even though some conflicts in the testimony do exist, we conclude that the facts found by the District Judge are permissible."

■ Even were we to agree with Hague and conclude that the district court had erred with respect to the first condition

* Senior District Judge of the Northern District of Alabama, sitting by designation.

precedent, we would still affirm the lower court on the basis of the second condition precedent, the requirement that the company be notified of the accident as soon as practicable. Hague contends that Yellow Cab notified its insurance agent of the accident on the day it occurred. There was testimony to support that contention. But, as with the question of the identity of the taxi, the absence of corroborating documentary evidence weakens the credibility of the testimony. The office manager for Yellow Cab's insurance agent testified that as soon as notice of an accident was received she always made a record of the notification and immediately reported it to the insurance company. Yet, she could find neither a record of this accident nor a record of a report to an insurance company. In addition, Liberty Mutual's regional claims manager was unable to find any report of the accident prior to February 1972, when he was notified of the suit. With such a conflict in proof, we cannot say that the district court erred when it concluded that neither Yellow Cab nor Watkins made an "effort to report [the accident] to the insurance company for two years."

Although Hague challenges the district court's factual finding, he also raises a more fundamental objection. He contends that Mississippi law prevents the insurance company from asserting inadequate notice as a defense. Hague bases his argument upon the Mississippi Motor Vehicle Safety-Responsibility Law. Miss.Code Ann. §§ 63-15-1 et seq. (1972). Section 63-15-43 of that law provides:

(6) Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

(a) the liability of the insurance company with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; . . . no violation of said policy shall defeat or void said policy;

Hague contends that because the policy was issued under the assigned risk plan required

by section 63-15-65 of that law, the policy was subject to the provisions of section 63-15-43(6)(a). Thus, Hague argues, the failure to comply with the notice requirement could not impair liability under the policy. Counsel for Liberty Mutual conceded at oral argument that if the policy was subject to the provisions of subsection (6)(a) the company could not plead a lack of notice. The depositions and the wording of the statute, however, reveal that this policy was not subject to the provisions of that section.

■■■ The provisions of subsection (6)(a) are applicable "to the insurance required by this chapter [chapter 15]." That chapter requires insurance only after an owner or operator has had an accident which causes property damage in excess of a certain amount or personal injury. Until an accident occurs, the general rule is that Mississippi does not require liability insurance to operate a motor vehicle. Once an accident occurs, however, the parties must report it to the Department of Public Safety. The Department is required to suspend the license of anyone involved in the accident, unless the owner or operator furnished security to satisfy any judgment that may arise from the accident and "proof of financial responsibility." Proof of financial responsibility may be provided in several ways, only one of which, a certificate of insurance, is applicable in this case. Section 63-15-39 provides that "[p]roof of financial responsibility may be furnished by filing with the department [of public safety] the written certificate of any insurance company authorized to write motor vehicle liability insurance in this state certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility." Thus, the "insurance required by this chapter," to which subsection (6)(a) is applicable, is the insurance used to provide proof of financial responsibility.

Hague advances a two-pronged argument to support his contention that the policy issued by Liberty Mutual was a policy required by chapter 15. First, he argues that

the policy was issued under an assigned risk plan, provided for in section 63–15–65. Second, he says that because Yellow Cab operated as a taxi cab company it was required by section 21–27–133 to carry liability insurance and to furnish proof of financial responsibility, thereby bringing Liberty Mutual's policy within chapter 15. Neither contention is correct.

■ The assigned risk plan was formed to comply with the mandate of section 63–15–65 which directs insurance companies that do business in Mississippi to establish an administrative agency to administer a plan for those "required by this chapter to show proof of financial responsibility for the future." Such an agency was formed. But, as revealed in the deposition of Houston Minniece, one of the former chairmen, the agency performed two services. Under what Minniece termed the "mandatory" plan, the agency assigned insurance companies the obligation to write policies for those who were required to furnish proof of financial responsibility. The agency also served as a clearinghouse through which insurance would be written under a "voluntary" plan for those who had difficulty in obtaining a policy through normal procedures. Taxi companies had difficulty obtaining coverage because no company licensed to do business in Mississippi wrote insurance for taxis. In order to obtain the coverage required by section 21–27–133, taxi companies applied to the administrative agency which apportioned the coverage among several insurance companies under the "voluntary" plan program. In the case of Yellow Cab, each of several insurance companies wrote a policy to cover four vehicles. After examining the Liberty Mutual policy, Minniece testified that it was written under the voluntary plan since the application showed that the company was not required to furnish proof of financial responsibility. The agent through whom Yellow Cab placed its insurance confirmed that the policy had been written through the voluntary assigned risk plan because of the difficulty of obtaining insurance through regular means.

■ Hague also argues that the Liberty Mutual policy was subject to subsection (6)(a) because Yellow Cab was required to have insurance by section 21–27–133. That argument ignores the words in subsection (6)(a) which make it applicable only to policies required by chapter 15. Section 21–27–133 is not only in a different chapter, it is in a different title of the Code as well. Moreover, it is clear from the text of section 21–27–133 that its provisions were meant to be independent of the provisions in title 63. Unlike title 63, section 21–27–133 requires insurance before an accident occurs. This departure from the general rule applies only to vehicles for hire, which cannot receive a permit until they have insurance. Another difference is that the insurance required by section 21–27–133 is reported to the municipality which licenses the vehicle, whereas the insurance required in title 63 is reported to the state Department of Public Safety. Section 21–27–133 contains requirements for minimum coverage which are not the same as those in title 63. Finally, section 21–27–133 provides certain procedural rights, some of which are the same as those in title 63 while others are different.

Our conclusion that the requirement of insurance for taxi companies differs from the requirements of title 63 does not contradict section 63–15–5 which provides: "Nothing in this chapter shall be construed so as to exclude from this chapter its applicability to taxicabs, jitneys or other vehicles for hire operating under franchise or permit of any incorporated city, town or village." The Mississippi Code carefully defines "proof of financial responsibility" and uses a special term, "motor vehicle liability policy," for insurance that may satisfy the statute's requirements. See Miss.Code Ann. §§ 63–15–3(j), 63–15–37, 63–15–43 (1972 & Supp.1977). Neither of those distinctive terms is used in section 21–27–133. If a taxi company were to be required to furnish "proof of financial responsibility," then the motor vehicle liability policy issued to make that proof would be governed by title 63. But the Yellow Cab Company was not re-

quired to furnish proof of financial responsibility. Its policies did not, therefore, come under title 63.

 Because the Liberty Mutual policy was not subject to subsection (6)(a), it was entitled to base its denial of coverage on the lack of notice. Interpreting Mississippi law, this court has said of the requirement that notice be given as soon as practicable, "if it appears that the giving of the notice has been delayed longer than was reasonably required physically to give the notice, then the material question would be whether that delay has caused prejudice." *Young v. Travelers Insurance Company,* 119 F.2d 877, 880 (5th Cir. 1941). We also said that the words "as soon as practicable" are "roomy words" and that they provide for "more or less free play." *Id.* Even giving the phrase the broad interpretation required, we cannot justify the two-year delay in notifying the insurance company in this case. *Cf. Harris v. American Motorist Insurance Company,* 240 Miss. 262, 126 So.2d 870, 873–74 (1961); *Aetna Life Insurance Company v. Walley,* 174 Miss. 365, 164 So. 16, 19 (1935).

Hague asserts that the district court did not find that Liberty Mutual was actually prejudiced by the delay. Although it is correct to say that the district court never used the word "prejudice," we cannot agree that the court did not find that Liberty Mutual had been prejudiced by the delay in receiving notice. Such a finding is implicit in the following portion of the district court's opinion:

> . . . the insurance company could not ascertain whether or not it had coverage on the particular cab and was never able to see about the condition of the brakes, or to examine either one of the cars. The insurance company simply was kept in complete darkness about this matter until it was confronted with this claim on which the plaintiff established liability and received a judgment . . . .

Because Liberty Mutual did not receive prompt notification and because it was prejudiced by the delay, the district court was correct in holding that Liberty Mutual owed nothing to Watkins.

Hague has also contended that he is entitled to enforce his judgment because Liberty Mutual breached its duty to defend those insured under the policy. That duty arises only if the conditions precedent are met. The failure to meet those conditions means that Liberty Mutual had no duty to defend either Yellow Cab or Watkins.

AFFIRMED.