UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Plaintiff,

v.

AMERICAN MOTORISTS INSURANCE COMPANY, Defendant.

No. WC 80–155–WK–P.

United States District Court, N. D. Mississippi, W. D.

June 24, 1982.

L. F. Sams, Jr., Tupelo, Miss., for plaintiff.

Carey E. Bufkin, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

In this Mississippi-based diversity action, Universal Underwriters Insurance Company (Universal), general liability insurer of the Cliff Colbert Chevrolet-Oldsmobile dealership and its partners (Cliff Colbert), seeks a declaratory judgment that defendant American Motorists Insurance Company (American), which issued a family automobile liability policy to Robert S. Salveson, has primary coverage for losses arising from an automobile accident in which Salveson's vehicle was involved. American counterclaims asserting that Universal has

primary coverage and owes it sums expended for settlement with claimants as well as for attorney fees, court costs and other litigation expenses. For reasons that follow, we deny both Universal's claim and American's counterclaim and dismiss the entire action with prejudice.

## I.

The facts are practically undisputed. Prior to September 27, 1978, Salveson, owner of a new Oldsmobile purchased from Cliff Colbert, arranged for Cliff Colbert to pick up his automobile at his residence at Greenwood, Mississippi, for servicing and minor repair at the agency garage in Grenada, about 30 miles away. Salveson understood that someone would be sent by Cliff Colbert to pick up and return the vehicle to his residence. At Cliff Colbert's request, Martine Poe on September 27 proceeded to Salveson's residence, where he identified himself to Mrs. Salveson as a representative of Cliff Colbert, and she consented for him to take the car to Grenada pursuant to her husband's direction. On his return, Poe collided with a vehicle operated by Margaret Grandberry, who was seriously injured, and whose sister, Mary Thomas, a passenger, was killed. When the accident occurred, Poe had not deviated from Cliff Colbert's instruction, and he was returning directly to the automobile agency in Grenada. Both vehicles were demolished. The accident was the result of Poe's negligence in operating Salveson's automobile.

On October 15, 1979, two actions were filed in state court by Mrs. Grandberry against Cliff Colbert, Poe and Salveson. Mrs. Grandberry's suit for personal injuries demanded $500,000 actual damages and $250,000 punitive damages; and her suit as sole heir-at-law of Mary Thomas demanded $250,000 actual damages and $150,000 punitive damages. American's policy provided bodily injury liability limits of $100,000 for each person and $300,000 for each occur-

rence; Universal's policy had limits of $100,000 for each person and $500,000 for each occurrence, plus substantial umbrella coverage. After the state court suits were instituted, each insurer maintained that the other should defend the cases. After being unable to agree, American employed different attorneys to represent the separate interests of Salveson, Poe and Cliff Colbert. Universal retained attorneys to monitor the state court litigation but not appear as counsel of record. After the federal declaratory action was filed on November 5, 1980, a compromise agreement of the damage suits was reached in April 1981 with Mrs. Grandberry, whereby she was paid $130,000 in full settlement of all claims against all named defendants, Universal, American and also Southern Farm Bureau Casualty Insurance Company, Poe's personal automobile liability carrier. The three insurers contributed to the settlement as follows: $103,500 by Universal, $19,500 by American and $7,000 by Southern Farm, pursuant to an agreement between Universal and American that this would not prejudice or affect their rights in the federal declaratory action.[1] In addition, American expended $21,417.77 for attorney fees and $1,113.23 for court costs, court reporter charges and investigative expense in defense of the state court actions.[2]

American's automobile liability policy obligated it to pay on behalf of the insured all sums for which the insured might be legally liable, within policy limits, because of personal injuries or death arising out of the ownership, maintenance and use of the insured automobile and also to "defend any suit alleging such bodily injury or property damages and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent, ..." The policy defined the insured as follows:

(a) With respect to the owned automobile,

---

1. Southern Farm's payment on behalf of Poe was made unconditionally and that company is not in the case.

2. Of this sum $10,290.71 was paid to Louis G. Baine to defend Salveson, $5,495.43 paid to Upshaw and Ladner to defend Poe, and $5,631.63 paid to Sumner, Hickman and Rayburn to defend Cliff Colbert.

(1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above.

American's policy also defined "automobile business" as "the business or occupation of selling, repairing, servicing, storing or parking automobiles," and contained certain exclusions, the pertinent one excluding coverage:

(g) to an owned automobile while used by any person while such person is employed or otherwise engaged in the automobile business but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent or employee of the named insured, such resident or partnership.

Finally, American's policy contained the following recital:

Financial Responsibility Laws

When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law, ...

■ Initially, the court finds as a fact that Poe worked for Cliff Colbert under an agreement to transport vehicles for the automobile agency in return for being reimbursed travel expenses, food and occasional over-night accommodations. Poe had for several years been used as an automobile deliveryman for Cliff Colbert and was subject to call to perform this specific service for the agency. Poe, who is a disabled veteran, was compensated for his services by obtaining every year without cost a new automobile by trading in his old car. When performing his duties he was under the exclusive direction and control of Cliff Colbert. On the occasion of this accident, Cliff Colbert had specifically instructed Poe to proceed to Greenwood, obtain the Salveson automobile and return it to the agency at Grenada. The relationship between Cliff Colbert and Poe was one of principal and agent, and when the accident occurred, Poe, as its agent and employee, was acting in furthering the automobile business of his employer. Poe was not Salveson's agent, nor was he performing services on behalf of Salveson.

The court further determines as a fact that on the day of the accident Poe obtained possession of the Oldsmobile with the express consent and permission of Salveson for the purpose of driving the automobile to the Cliff Colbert agency, and when the collision occurred, Poe was operating the automobile within the scope of Salveson's permission.

Universal's general liability policy provided coverage for bodily injury and death on behalf of any insured, which is defined in Section IV as meaning

(a) any partner or paid employee ... of the named insured or such partner or paid employee ... while using an automobile covered by this coverage part or when legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and

(b) any person or organization legally responsible for the use thereof while such automobile is physically operated by the named insured or any such partner or paid employee ... provided the actual use of the automobile is by the named insured or with his permission.

II.

(a) WHO HAS PRIMARY COVERAGE?

Universal contends that Poe, in operating the Salveson automobile with the owner's

permission, was an insured under the omnibus clause, the terms of which are defined by Mississippi statute, any policy provision in conflict with the statute is unenforceable, and hence the exclusion sought to be made in (g), often referred to as the automobile garage exclusion, is a nullity. Therefore, says Universal, it is entitled to recover from American as the primary insurer $103,500 which it paid to effect settlement.[3] This position is vigorously contested by American, which asserts that its policy provisions do not conflict with Mississippi's Financial Responsibility Act, that Section (g) is a valid and enforceable exclusion applicable to the facts determined from the evidence, and relies upon *Ramsay v. Price*, 249 Miss. 192, 161 So.2d 778 (1964) as controlling. Alternately, American urges that if the state's Financial Responsibility Act does define the omnibus insured clause in such manner as to nullify (g) as an exclusion, nevertheless to the extent that its policy is written in excess of the $10,-000/$20,000 minimum, the policy provisions are unaffected by statute.

The key issue becomes the interpretation and effect of the pertinent provisions of the Mississippi Motor Vehicle Safety Responsibility Law, Miss.Code Ann. § 63–15–1, et seq. (1972), a statutory scheme which requires the operator of a motor vehicle following an accident, to furnish satisfactory evidence of financial responsibility. This can be done by presenting evidence of an automobile liability insurance policy with limits of not less than $10,000 for bodily injury or death to any one person and $20,-000 for bodily injury or death to two or more persons in one accident, § 63–15–23 (1981 Supp.), or else the motor vehicle operator's license and owner's vehicle registration may be suspended. Proof of financial responsibility is satisfied by certificate of the insurance company that there is in effect the requisite motor vehicle liability policy for the benefit of the motor vehicle operator and owner. § 63–15–39.

Section 63–15–43 (1981 Supp.) provides an explicit definition of a "motor vehicle liability policy," as used throughout the Act. Subsection (1) provides:

> (1) A "motor vehicle liability policy" as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, *certified as provided in section 63–15–39 or section 63–15–41, as proof of financial responsibility*, and issued ... by an insurance company duly authorized to write motor vehicle liability insurance in this state, to or for the benefit of the person named therein as insured. (Emphasis added).

A literal reading of Subsection (1) might suggest that the requirements of § 63–15–43 apply only to liability insurance policies purchased *after* an owner or operator has had an accident and *certified as proof of financial responsibility* as provided by §§ 63–15–39 and 63–15–41. *See Hague v. Liberty Mutual Ins. Co.*, 571 F.2d 262, 265 (5 Cir. 1978). Under this interpretation, policies issued and in effect *prior* to the accident would not be subject to the requirements of § 63–15–43 since owners and operators with policies in effect at the time of an accident are excused from providing certified proof of financial responsibility. § 63–15–11(4) (1981 Supp.). The Mississippi Supreme Court, however, has not so interpreted § 63–15–43(1). In *Vaughn v. State Farm Mut. Auto. Ins. Co.*, 359 So.2d 339 (Miss.1978), a case decided within two months of *Hague*, the state Supreme Court continued to apply the statute to any liability insurance policy, whether obtained prior to the accident or subsequent thereto, in order to certify proof of financial responsibility. *Vaughn* dealt with an insurance policy obtained prior to an accident. 395 So.2d at 340. Since the policy was obtained before the accident, the owner was exempt from the requirement of § 63–15–11(2) that he provide proof of financial responsibility or risk suspension of his license and vehicle

---

**3.** The release which Mrs. Grandberry executed was for $130,000 for all claims without allocating any amount paid to settle the death claim of Mary Thomas and for the personal injury claims of Mrs. Grandberry. For reasons which later appear, this failure to allocate is of no legal significance in this case.

registration. The Court assumed, without discussion of proof of responsibility, that § 63–15–43 applied to *all* automobile liability insurance policies, making no distinction between policies procured prior to the accident and policies obtained subsequently as proof of financial responsibility. *See also,* *State Farm Auto. Ins. Co. v. Moore,* 289 So.2d 909 (Miss.1976) (application of § 63–15–43 to policy obtained prior to accident; *United States Fidelity & Guaranty Co. v. Stafford,* 253 So.2d 388 (Miss.1971) (same). As alluring as the Fifth Circuit's interpretation of this section may be, this court is *Erie* -bound to follow the Mississippi Supreme Court in the interpretation of this state's statute. We, therefore, reject American's argument that the policy which it issued to Salveson before the September 27, 1978 accident is not governed by § 63–15–43.

Section 63–15–43 also sets forth the mandatory provisions which must be contained in such a "motor vehicle liability policy." Subsection 2(b) provides:

> (2) Such owner's policy of liability insurance:
>
> (b) shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: ten thousand dollars ($10,000.00) because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person, twenty thousand dollars ($20,000.00) because of bodily injury to or death of two (2) or more persons in any one (1) accident, and five thousand dollars ($5,000.00) because of injury to or de-

struction of property of others in any one (1) accident.

Subsection 7, however, provides:

> (7) Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy, and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage, the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

■■■ Mississippi jurisprudence requires any difference between the provisions of an automobile liability policy and the statutory requirements be resolved in accordance with the statute, the terms of which are incorporated in and become a part of the policy. *United States Fidelity and Guaranty Co. v. Stafford,* 253 So.2d 388 (Miss.1971). *State Farm Mutual Automobile Ins. Co. v. Moore,* 289 So.2d 909, 911 (Miss.1974), specifically applied this rule to enforce the exact language of the statutory omnibus clause against an insurer whose policy differed in exactly who was covered. The Fifth Circuit, in *Missouri General Ins. Co. v. Youngblood,* 515 F.2d 1254, 1257 (5 Cir. 1975), recognized the state policy emanating from the Safety Responsibility Act (as well as the Uninsured Motorist Coverage Act, not applicable here) to invalidate an insurer's attempt to limit liability through policy provisions in conflict with statutory law. Though *Youngblood* dealt with an impermissible offset provision designed to reduce coverage, and was not concerned with the import or parameter of the omnibus clause, as here, the court stressed the anomaly of one owning and paying for a policy of requisite limits, yet which failed to satisfy the Law's requirement of proof of financial responsibility because of incompatible policy provisions.

American points out that the Mississippi courts have never ruled that exclusion (g) is unenforceable as a prohibited limitation

upon the statutorily defined omnibus clause in 2(b), and contends that Poe, though using and operating Salveson's vehicle with the owner's permission, is not an insured because he was a person then employed or otherwise engaged in the automobile business. We agree there is no exact Mississippi precedent, making this a case of first impression.

We believe, however, that the rationale of *Stafford, Moore* and *Vaughn,* based upon public policy considerations of assuring insurance coverage to the public by strict adherence to the statutory definition of an omnibus insured, requires us to hold otherwise, at least as to the statutorily required minimum policy limits. If 2(b) does not expressly prohibit (g) as an exclusion, neither does it explicitly authorize the exclusion of an operator using and operating the insured's vehicle with the owner's permission. Hence, any ambiguity in the statute must be resolved against the insurer, especially in construing a remedial statute specifically designed to afford insurance protection to the public. Other courts construing a statutory omnibus clause have unhesitatingly held that policy provisions purporting to exclude certain classes of users from coverage are contrary to public policy, as embodied in statute, and are void, the only permissible exclusions from omnibus coverage being those expressly stated in the statute. *Unsatisfied Claim and Judgment Fund Board v. Clifton,* 117 N.J.Sup. 5, 283 A.2d 350; *Metz v. Universal Underwriters Ins. Co.,* 10 Cal.3d 45, 109 Cal.Rptr. 698, 513 P.2d 922; *National Union Fire Ins. Co. v. Truck Ins. Exchange,* 107 Ariz. 291, 486 P.2d 773. *See* 7 Am.Jur.2d, *Automobile Insurance,* § 248, p. 819. Blashfield, Automobile Law and Practice § 315.16; Couch on Insurance 2d § 45:316.

American's reliance upon Mississippi cases decided prior to *Stafford, Moore* and *Vaughn* which held enforceable exclusionary clauses to deny coverage to permissive drivers is misplaced, as those cases are readily distinguishable. In *Ellis v. Southern Farm Bureau Casualty Ins. Co.,* 233 Miss. 840, 103 So.2d 357 (1958); *Benton v. Canal Ins. Co.,* 241 Miss. 493, 130 So.2d 840 (1961), and *United States Fidelity and Guaranty Co. v. Mathis,* 236 So.2d 730 (Miss.1970), the state supreme court considered only the effect of clear and unambiguous policy exclusions without reference to the terms of the statutory omnibus clause. In our view, the later holdings in *Stafford, Moore* and *Vaughn* require a different result as to a motor vehicle liability policy to the extent that its terms are governed by § 63-15-43.

Although exclusion (g) of American's policy is rendered ineffective as to the statutory $10,000/$20,000 limits, this does not affect the enforceability of the exclusion of Poe from American's excess coverage ($90,-000/$280,000). Subsection 7 expressly exempts such excess or additional coverage from the provisions of the state's Financial Responsibility Act. It is manifestly clear that the legislature intended to leave an insurer free to make such reasonable contractual provisions as it might wish in writing an automobile liability policy for more than the statutory limits. "Above these limits, the amount of automobile liability insurance carried by the owner of a motor vehicle becomes a matter of personal choice, limited by his ability to obtain the insurance and pay for it." *Travelers Indemnity Co. v. Chappell,* 246 So.2d 498, 509 (Miss.1971). Universal cites no authority that, apart from statute, the garage exclusion is void as a matter of public policy, and we deem it to be a reasonable and proper limitation upon coverage. An insurer has a legitimate concern in protecting itself from greater hazards involved in the conduct of an automobile business and it should have the right to insert the automobile business or garage exclusion, as set forth in (g) of American's policy, to exclude coverage in the issuance of a family automobile policy not intended or designed for increased business risk of that character. The exclusion being clear and unambiguous, we hold that American's policy afforded no coverage to Poe or to Cliff Colbert for the excess limits.

Applying the foregoing principles, American, by contributing $19,500 to the Grandberry settlement and costs of the state court litigation, satisfied its obligation as

primary carrier,[4] and for which Universal is not liable. However, the funds paid in settlement by Universal, as excess carrier, are unrecoverable from American.

### (b) WHO HAD THE DUTY TO DEFEND?

American counterclaims against Universal for attorney's fees incurred in defending the state court litigation. See n.2. We find this claim to be without merit. As previously stated, American's policy obligated it to defend any suit against the insured, even if the suit's allegations were groundless, false or fraudulent. The declarations in state court charged Salveson, the named insured, with negligence in entrusting his car to Poe, alleged to be an incompetent driver, that Poe negligently operated the insured vehicle, and that Cliff Colbert, as employer, was also liable for Poe's negligence. Mississippi follows the general rule that "the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint." *Southern Farm Bureau Ins. Co. v. Logan*, 238 Miss. 580, 119 So.2d 268, 271 (1960). Thus, the insurer's ultimate liability is not the criterion for determining whether the insurer is obligated to defend; and if factual allegations made by the tort plaintiff bring an action within the coverage of the policy, irrespective of what the actual facts may later prove to be, the insurer is contractually bound to defend the insured. *Preferred Risk Mutual Ins. Co. v. Poole*, 411 F.Supp. 429 (N.D.Miss.1976). Since Salveson was a defendant in the state court litigation and charged with personal and vicarious negligence and liability, American unmistakably owed him a defense.[5] Also, Poe, an insured under the omnibus clause to the extent of the statutory limits, was owed a defense by American. Moreover, since the state court suits charged liability against Cliff Colbert, Poe's employer, American's policy, by so broadly defining the insured in (a)(3), noted above, extended coverage to that organization, and had a duty to defend it, because of its vicarious liability for the acts of the omnibus insured. American contends that since the declarations on their face also alleged liability as to Cliff Colbert and Poe, its employee, and that they were engaged in using the automobile for purposes of the automobile business at the time of the collision, Universal had an equal, if not greater, duty to defend its own insureds and wrongfully refused to do so. We agree that Universal had a duty to defend Cliff Colbert and Poe, but not Salveson. To this extent both insurers had a common obligation. Being unsuccessful in getting Universal to voluntarily accept the defense of Cliff Colbert, American proceeded to defend all defendants in state court, manifestly out of a concern for its own duty. Having acted voluntarily in this regard, American may not now invoke judicial process to compel reimbursement from Universal of costs incurred in what it perceived its own policy required it to do.

Let an order issue accordingly.

---

4. Counsel agree it is reasonable for the court to apportion $10,000 of American's contribution to the death claim of Mary Thomas and $9,500 to Mrs. Grandberry's personal injuries. The remaining $500 was more than absorbed by American's payment of court costs and court reporter's charges in state court.

5. This would account for nearly one-half of the attorney's fees paid to Mr. Baine to represent Salveson.