**TXO PRODUCTION CORP.**

v.

**TWIN CITY FIRE INSURANCE CO.**

**Civ. A. No. B–88–0266–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

May 26, 1988.

---

Anthony Brocato, Beaumont, Tex., for plaintiff.

Cleve Bachman, Greg Brown, Orgain, Bell & Tucker, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

The lawsuit began as a personal injury action arising out of a construction accident in February 1984 at an oil well drilling site near Garwood, Texas. The plaintiff, Calvin Dupont, sued the drill site owner, Texas Oil & Gas Corp., and its affiliates (collectively referred to as "TXO") for negligence. Mr. Dupont settled the case with TXO for $375,000. TXO, through a third party complaint, now seeks indemnity from Mr. Dupont's employer, Richards Drilling Company ("Richards"), the drill site operator, and Twin City Fire Insurance Company ("Twin City"), Richards' excess insurance carrier. TXO contends that because of the insolvency of Transit Casualty Insurance Company ("Transit Casualty"), Richards' primary insurance carrier, Twin City must "drop-down" and assume Transit Casualty's defense and indemnity obligations. The issue the court must decide, using Texas law, is whether the insurance policy between TXO and Twin City provides for "drop-down" or whether the policy only requires Twin City to pay claims in excess of those originally contracted to be paid by the primary insurer.

An identical insurance policy and similar circumstances were addressed by the Fifth Circuit applying Louisiana law in *Steve D. Thompson Trucking, Inc.*, 832 F.2d 309 (5th Cir.1987). As in the instant case, the primary carrier was insolvent and the insured sought a declaration that Twin City, as the excess carrier, was required to assume the insolvent carrier's defense and indemnity obligations. The Fifth Circuit summarily rejected this claim, noting that there were important reasons for distinguishing between primary and excess insurance policies:

> In general, an excess insurance policy provides coverage that begins only after a predetermined amount of primary coverage is exhausted. This underlying coverage reduces the risk that an excess insurer will have to pay for losses incurred by the insured. This reduced risk to the insurer translates into a reduced premium to the insured.

*Id.* at 310.

Moreover, the Fifth Circuit considered the Twin City policy unambiguous in providing coverage only over and above the primary coverage:

> [The insured] bargained for and purchased a primary insurance policy from [the insolvent underlying carrier], and an excess insurance policy from Twin City. The coverage section of the Twin City policy *clearly* delineates Twin City's obligations. That section states that the company will indemnify for loss 'in excess of the underlying limit ...' The 'definitions' section of the policy defines 'underlying limit' as the 'limits of the underlying insurance as stated in the Schedule of Underlying Insurance Policies.' *The Twin City policy was clearly intended to provide coverage over and above the coverage provided by the primary insurer.* The 'other insurance' in the separate 'conditions' section providing that the excess coverage is 'over any other valid and collectible insurance' *does not* require or imply that the listed primary insurance of [the insolvent primary carrier] must be collectible to be counted as part of the underlying limit.

*Id.* at 311 (emphasis added). Accordingly, the Fifth Circuit concluded that, under Lou-

isiana law, Twin City had neither a duty to defend nor to indemnify the insured for claims which were within the coverage of the insolvent underlying carrier. *Id.* at 311–12.

The *Thompson Trucking* case followed other court decisions which interpreted similar umbrella insurance policies as not substituting for the policies of insolvent primary carriers. Faced with the growing problem of primary insurer insolvency, the courts, including the Fifth Circuit, have repeatedly refused to "transmogrify"[1] umbrella and excess insurance policies by saddling those insurers with the risk of a primary insurer's insolvency—a peril contemplated by neither the insured nor the excess carrier at the time the policy was issued.

TXO has attempted to escape the edict of *Thompson Trucking* by pointing out that *Thompson Trucking* involved Louisiana law, and that this court was free to predict the Texas result. The plaintiff is correct in stating that the Texas courts have not addressed the problem of the liability of the umbrella carriers when the primary carriers are insolvent. However, the plaintiff has failed to point to any significant differences between Texas law and Louisiana law which would allow this court to depart from the decision in *Thompson Trucking.*

In conclusion, the court finds that the Twin City umbrella insurance policy does not require Twin City to assume the obligations of the insolvent primary insurance carrier. Therefore, the court concludes that Twin City's motion for summary judgment is sound and should be GRANTED.

It is hereby ORDERED, ADJUDGED and DECREED that defendant Twin City's motion to dismiss is GRANTED.

---

**1.** "We therefore look to the possible consequences of [requiring an excess carrier to 'dropdown' and assume the obligations of the insolvent primary insurer]. Imposing the duty of indemnification on [the excess carrier] would, in effect, transmogrify the policy into one guaranteeing the solvency of whatever primary insurer the insured might choose." *Continental Marble & Granite v. Canal Ins. Co.,* 785 F.2d 1258, 1259 (5th Cir.1986) (citing *Golden Isles Hosps., Inc. v. Continental Casualty Co.,* 327 So.2d 789, 790 (Fla.App.1976)).