**Clara WARE, Plaintiff,**

v.

**CARROM HEALTH CARE PRODUCTS, INC., Defendant.**

**No. EC86–218–S–D.**

United States District Court, N.D. Mississippi, E.D.

Dec. 19, 1989.

---

Wilbur Colom, Dennis Harmon, Columbus, Miss., for plaintiff.

J. Carter Thompson, Jr., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for International Ins. Co.

Shane F. Langston, Holcomb, Dunbar, Connell, Chaffin & Willard, Jackson, Miss., for Everest and Jennings Intern., EV–JEN Medical, and Carrom Health Care Products, Inc.

Taylor B. Smith, Threadgill, Smith, Sanders & Jolly, Columbus, Miss., for St. Paul Fire and Marine Ins. Co.

## OPINION

SENTER, Chief Judge.

This cause is before the court on cross motions for summary judgment. In short, "we are asked to declare the winner in a game of grammatical tug-of-war between an excess insurer and an insured over whether an excess insurance policy 'drops down'[1] in place of a policy issued by a now-insolvent primary insurer." *Transco Exploration Co. v. Pacific Employers Insurance Co.*, 869 F.2d 862 (5th Cir.1989).

### I.

#### A.

The original complaint alleges that on February 1, 1984, a hospital bed manufactured by defendant Carrom Health Products, Inc., fell on plaintiff Clara Ware as she was performing her duties as housekeeper for the Oktibbeha County Hospital and caused serious injury to her back. Her theories of recovery are that the bed was defective and unreasonably dangerous and negligently designed.

Mission American Insurance Company, Carrom's liability carrier, hired an attorney to defend the suit. An answer was filed on Carrom's behalf but then, on September 11, 1987, counsel was allowed to withdraw. The magistrate's order indicated that Mission American had been placed under conservatorship by the State of California and attempts to contact any entity carrying on

---

1. "If an excess insurer 'drops down,' it assumes the primary insurer's responsibility for coverage." *Boudreaux v. Shannon Marine, Inc.*, 875 F.2d 511, 514 n. 1 (5th Cir.1989).

business in the name of Carrom were unsuccessful.[2]

International Insurance Company filed an intervening petition because it had issued to Carrom a policy of excess insurance. The request for declaratory judgment relief was based on an argument consistently maintained throughout this litigation:

> As clearly provided in the attached policy of insurance, International does not provide "drop down" coverage in the event of the insolvency of the primary carrier. The policy makes it clear that International has no coverage for any claim, including the plaintiff's claim herein, unless and until a judgment is rendered in excess of the primary policy limits ($500,-000.00).
>
> It is further clear from the policy of insurance that International does not have a duty to defend Carrom in this case. Under paragraph 6 of Section III, for example, the policy states: "This policy shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance."

A contestant for this position immediately surfaced in the corporate persons of Everest and Jennings International and EV–JEN Medical,[3] on whose behalf a Rule 57 Complaint for Declaratory Judgment was filed.

After default was averted, International and Carrom filed respective motions for summary judgment.[4] The construction of a contract is squarely before us;[5] any analysis must be preceded by mapping out its relevant provisions.

**2.** This latter problem is most reasonably explained by the fact that on October 31, 1986, two weeks after the answer was filed, substantially all of Carrom's operating assets and those of its parent, Thompson–Blair, Inc., were sold to Med Service, Inc., a Mississippi corporation. We refrain from completing the entire corporate picture, since it would not add anything to an understanding of the issues presented.

**3.** We have described Carrom as Everest and Jennings International's "sub twice removed." *See* Order Denying Plaintiff's Motion for Default Judgment. EV–JEN Medical is a wholly owned subsidiary of Everest & Jennings.

**B.**

According to the declarations sheet, the limit of liability for certain coverages and the aggregate limit for each annual period with respect to other hazards is $5,000,-000.00 each. Item 4(c), "self-insured retention," is zero. The schedule of underlying comprehensive general liability insurance for bodily injury, combined single limit, is $500,000.00 each occurrence and $500,-000.00 aggregate when applicable. A $1,900.00 annual premium is "flat charged;" next to estimated annual exposure is "N/A."

The body of the policy contains, *inter alia*, the following language:

DEFENSE SETTLEMENT

With respect to any occurrence covered by the terms and conditions of this policy, but not covered, as warranted, by the underlying policies listed in Schedule A hereof or not covered by any other underlying insurance collectible by the insured, the company shall;

> (a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; ...
>
> (c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such

**4.** It is also unnecessary for us to set forth the entire procedural history of this case. We cannot help but comment, though, on the resemblance between Carrom's recent answer and cross claim to International's nearly year-old petition in intervention and Carrom's original complaint for declaratory judgment.

**5.** Plaintiff's counsel wrote the court this past August 21: "As to the dispute concerning the insurance policy, Clara Ware, plaintiff, takes no position. Although it, of course, ultimately concerns us, it is not a dispute that I believe we have standing to argue at this point. Therefore, we decline to submit briefs."

judgment as does not exceed the limit of the company's liability thereon; ...

\* \* \* \* \* \*

DEFINITIONS

\* \* \* \* \* \*

"ULTIMATE NET LOSS"

"Ultimate Net Loss" means the total of the following sums with respect to each occurrence;

(a) all sums which the insured is legally obligated to pay as damages whether by reason of adjudication or settlement, because of bodily injury, personal injury, property damage or advertising liability to which this policy applies, and (b) all expenses, other than defense settlement provided in Insuring Agreement II, incurred by or on behalf of the insured in the investigation, negotiation, settlement and defense of any claim covered by this policy or suit seeking such damages, excluding only the salaries of the insured's regular employees.

This policy shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance.

\* \* \* \* \* \*

RETAINED LIMIT—LIMIT OF LIABILITY

The Company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of;

(a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other insurance collectible by the insured; or

(b) the self-insured retention stated in Item 4(c) of the declarations as the result of all occurrences not covered by said underlying insurance, and which shall be borne by the insured, separately as respects each annual period of this policy.

When the self-insured retention stated in Item 4(c) has been exhausted, this policy shall apply without application of the self-insured retention for the remainder of that annual period.

The company's liability shall not exceed the amount stated in Item 4(a) of the declarations as the result of any one occurrence. . . .

\* \* \* \* \* \*

CONDITIONS

A. Premium Computation ... The advance premium is based upon the estimated exposures for the policy period as stated in the declarations.

\* \* \* \* \* \*

E. Assistance and Co-operation. Except as provided in Insuring Agreement II (Defense Settlement) or in Condition J (Underlying Insurance) the company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the insured, but the company shall have the right and opportunity to associate with the insured in the defense and control of any claim or proceeding reasonably likely to involve the company. In such event the insured and the company shall cooperate fully.

\* \* \* \* \* \*

G. Loss Payable. Liability of the company with respect to any one occurrence shall not attach unless and until the insured, the company in behalf of the insured, or the insured's underlying insurer, has paid the amount of retained limit. Where the company must indemnify the insured for ultimate net loss in accordance with Insuring Agreements, the insured shall make a definite claim for any loss for which the company may be liable within twelve (12) months after the insured shall have paid an amount of ultimate net loss in excess of the amount borne by the insured or after the insured's liability shall have been made certain by final judgment against the insured after actual trial, or by written agreement of the insured, the claimant and the company. If any subsequent payments are made by the insured on account of the same occurrence, additional claims shall be made similarly from time to time and shall be payable within

thirty (30) days after proof in conformity with this policy.

The insured shall promptly reimburse the company for any amount of ultimate net loss paid on behalf of the insured within the self-insured retention specified in Item 4(c) of the declarations.

H. Bankruptcy or Insolvency. Bankruptcy or insolvency of the insured shall not relieve the company of any of its obligations hereunder.

I. Other insurance. If other collectible insurance including other insurance with this company is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit of liability hereunder) the insurance hereunder shall be in excess of and not contribute with such other insurance.

J. Underlying Insurance. If underlying insurance is exhausted by any occurrence the company shall be obliged to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another carrier.

In the event of the reduction or exhaustion of the aggregate limits of liability of the underlying policies listed in Schedule A solely by reason of losses paid thereunder in respect of occurrences happening during the policy period of this policy, this policy, (1) in the event of reduction, shall pay the excess of the reduced underlying limits; or (2) in the event of exhaustion, shall continue in force as underlying insurance.

\* \* \* \* \* \*

O. Maintenance of Underlying Insurance. It is warranted by the insured that the underlying policies listed in Schedule A, or renewals or replacements thereof not more restricted, shall be maintained in force during the currency of this policy, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of

occurrences happening during this policy period. In the event of failure by the insured to so maintain such policies in force or to meet all conditions and warranties subsequent to loss under such policies the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force.

In the event there is no recovery available to the insured as a result of the bankruptcy or insolvency of the underlying Insurer, the coverage hereunder shall apply in excess of the applicable limit of liability specified in Schedule A.

We now turn to Mississippi jurisprudence for directions in this diversity case.

## II.

### A.

Many of our bearings are supplied by *Brander v. Nabors*, 443 F.Supp. 764 (N.D. Miss.1978), *aff'd*, 579 F.2d 888 (5th Cir. 1978). When the question "Is the Policy Ambiguous" was asked, the answer was:

A basic rule of law, recognized in Mississippi and universally, is that insurance policies like other written contracts, are construed most strongly against the drafter, ... and any ambiguity in an insurance policy is construed against the insurer and in favor of the insured, ....

"If the terms of an insurance policy are reasonably susceptible to two interpretations, the one sustaining indemnity must prevail." ...

It is equally well settled that "the special rules favoring the insured are only applicable when there *is* an ambiguity ... [and that] courts ought not to strain to find such ambiguities, if, in so doing, they defeat probable intentions of the parties ... even when the result is an apparently harsh consequence to the insured,".... Courts will neither create an ambiguity where none exists nor make a new contract for the parties.... If the policy language is clear, unequivocal, and, hence, unambiguous, its terms will be enforced, ... since "[t]he power to make such contracts as the parties

desire to make, when not prohibited by law or public policy, is a fundamental principle of the ... insurance business, and is essential to its successful conduct." ...

443 F.Supp. at 769 (emphasis in opinion) (citations omitted). *See also Foreman v. Continental Casualty Co.*, 770 F.2d 487, 489 (5th Cir.1985) ("To this law we are bound."); *Blaylock v. Life Insurance Company of North America*, 615 F.Supp. 310, 312–13 (N.D.Miss.1985) (federal court *Erie*-bound to follow Mississippi's rules of construction and interpretation of insurance contracts).

Another voice tells us:

In construing the provisions of a contract of insurance, all the provisions of the policy must be so construed, if it can be reasonably done, so as to give effect to each.... If one construction, looking to the other provisions of the policy, and to its general object and scope, would lead to an unreasonable result, such construction must be abandoned, and that construction adopted which will be more consistent with reason.

*Southern Home Insurance Co. v. Wall*, 156 Miss. 865, 127 So. 298, 299 (1930). *See generally Griffin v. Maryland Casualty Co.*, 213 Miss. 624, 57 So.2d 486, 489 (1952).

Carrom argues that we "should construe the International policy to provide for 'drop-down' coverage in light of the 'uncollectibility' of insurance from the primary carrier." The gist of International's position is that "[t]o construe the policy as urged by [Carrom], would both be contrary to the ordinary meaning of the words used, and would render part of the [policy] meaningless." *Continental Casualty Co. v. Hester*, 360 So.2d 695, 697 (Miss.1978). *See also State Automobile Mutual Insurance Company of Columbus, Ohio v. Glover*, 253 Miss. 477, 176 So.2d 256, 258 (1965) (cited by International for the proposition that "[n]o rule of construction requires or permits the Court to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear").

There are no Mississippi cases "directly controlling." *Harville v. Twin City Fire Insurance Co.*, 885 F.2d 276, 278 (5th Cir. 1989). We do, however, find cases of "controlling guidance," *id.*, which, when joined with the above general delineations, transport us to what we believe to be the appropriate initial destination.

## B.

Excess insurance usually "provide[s] coverage only for liability above the maximum coverage of the primary policy or policies," 8A J. Appleman, Insurance Law and Practice § 4909 (1981), and "[i]n its ordinary usage, the word 'excess' means 'over and above[,]' ... not ... 'down into.'" Thus, excess carriers ordinarily are not required to provide drop-down coverage in the event of the insolvency of an underlying insurer." *Highlands Insurance Co. v. Gerber Products Co.*, 702 F.Supp. 109, 112 (D.Md.1988) (citations omitted). But it has been observed that "[w]hen an excess insurer uses the term 'collectible' or 'recoverable' it is agreeing to drop down in the event the primary coverage becomes uncollectible or unrecoverable." *Mission National Insurance Co. v. Duke Transportation Company, Inc.*, 792 F.2d 550, 553 (5th Cir.1986). *Cf. Truehart v. Blandon*, 884 F.2d 223, 225 n. 5 (5th Cir.1989) ("A 'drop down' clause [quoted at 227 n. 8] in an umbrella policy typically operates to provide coverage when underlying, principal insurance is exhausted or otherwise unavailable to satisfy claims against the policyholder.") (citations omitted). A thorough scan of the instant excess policy brings the word collectible within our view. It is incumbent that we focus on its precise relevant locale.

International's "liability shall be only for the ultimate net loss [6] in excess of the insured's retained limit defined as the greater of ... the total of the applicable limits of the underlying policies listed in

---

**6.** This equates with "all sums which the insured is legally obligated to pay as damages whether by reason of adjudication or settlement, because of bodily injury [or] personal injury ... to which this policy applies...."

Schedule A [$500,000.00] ... and the applicable limits of any other insurance collectible by the insured"; or zero, the amount of self-insured retention for occurrences not covered by underlying insurance.

In *Transco Exploration Co. v. Pacific Employers Insurance Co.*, the excess policy defined the limits of liability in terms practically identical to those used by International.[7] The essence of the issue was the grammatical reach of the phrase "collectible by the Insured." 869 F.2d at 863–64. The panel described its dilemma as follows:

Both parties agree that, to be included in the calculation of ... retained limit, "any other [i.e., nonscheduled] underlying insurance" must be collectible; the battle is joined, however, over whether scheduled underlying insurance ... must also be collectible before it is included in the calculation.

No Texas court has passed upon this question; nor has our court, using either Texas, federal, or any other state's law.[8] Other courts that have addressed this question have split, with the majority interpreting the quoted policy language to provide that of the two types of underlying insurance defined in the policy— scheduled and nonscheduled—only the latter need be collectible. All of these courts reached their conclusions using general principles of insurance contract construction, upon which Texas law is similarly based.

*Id.* at 864 (footnotes omitted).

Carrom follows much of the approach taken by Transco before the Fifth Circuit;

unfortunately for both, the court did not adopt such reasoning, *id.* at 864–65 (text and accompanying footnotes), and we think it right and wise to obey the conclusion and hold that

the quoted language admits of only one reasonable interpretation: It plainly contemplates two types of underlying insurance, scheduled and nonscheduled.... The most natural reading of the language is therefore to read the two phrases separately, with the collectibility requirement being confined to the second phrase. With the policy so construed, only nonscheduled underlying insurance need be collectible to be included in the calculation of the insured's retained limit; the limits of scheduled underlying insurance ... is included regardless of whether the insured can actually collect on the policy.

*Id.* at 864.

This is a "fair and just construction of the [subject] provision, when taken with the numerous other provisions of the policy."[9] *United States Fidelity & Guaranty Co. v. Wilson*, 184 Miss. 823, 185 So. 802, 803 (1939). There is simply no "fair doubt [to] be resolved in favor of the insured." *Penn v. Commercial Union Fire Insurance Company of New York*, 233 Miss. 178, 101 So.2d 535, 536 (1958).

We leave this part of the opinion by cautioning that we are not deciding this case on what we consider the way of public policy.[10] The only evidence presented for

---

**7.** Retained limit was defined as "an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof ..., plus the applicable limits of any other underlying insurance collectible by the Insured;...." 869 F.2d at 863.

**8.** *But cf. Steve D. Thompson Trucking, Inc. v. Twin City Fire Insurance Co.*, 832 F.2d 309, 311 (5th Cir.1987) ("The 'other insurance' in the separate 'conditions' section providing that the excess coverage is 'over any other valid and collectible insurance' does not require or imply that the listed primary insurance ... must be collectible to be counted as part of the underlying limit."); and *Mission National Insurance Co. v. Duke Transportation Company, Inc.*, 792 F.2d at 553–54 ("it is clear that the phrase 'other valid

and collectible insurance' refers to any insurance Duke carried in addition to the underlying insurance listed in the schedule").

**9.** Carrom cannot claim that it is without notice of the limited nature of International's coverage, for it is expressed elsewhere in the excess policy that "[i]n the event there is no recovery available to the insured as a result of the bankruptcy or insolvency of the underlying Insurer, the coverage hereunder shall apply in excess of the applicable limit of liability specified in Schedule A."

**10.** *See, e.g., Fried v. North River Insurance Co.*, 710 F.2d 1022 (4th Cir.1983); *Boudreaux v. Shannon Marine, Inc.; Steve D. Thompson Trucking, Inc. v. Twin City Fire Insurance Co.;*

the suggestion that $1,900.00 is a reduced charge for excess coverage is the paragraph in the International policy that "[t]he advance premium is based upon the estimated exposures for the policy period as stated in the declarations." With only this before us, we would not be confident in assessing the economics of an already complex world. *Continental Marble & Granite v. Canal Insurance Co.*, 785 F.2d at 1259. We are not hesitant, though, in our belief that another route "would re-write the excess liability policy to place a risk on [International] which [International] never agreed to assume." *Harville v. Twin City Fire Insurance Co.*, 885 F.2d at 279.

## III.

### A.

A different question is presented in the area of International's duty to defend. It appears, though, that there are no changes to the framework of our deliberation. We again begin with a few basics.

*Preferred Risk Mutual Insurance Co. v. Poole*, 411 F.Supp. 429 (N.D.Miss.1976), *aff'd*, 539 F.2d 574 (5th Cir.1976), serves the same function here as *Brander v. Nabors* did for part II.A. of this opinion:

> Under a long line of Mississippi cases ..., it is well settled that "[t]he insurer's ultimate liability is not the criterion for determining whether the insurer is obligated to defend." ... The general rule is that the company's duty to defend is to be determined by the allegations of the complaint in an action against the insured. If those factual allegations bring the action within the circumstances and terms covered by the policy, irrespective of what the actual facts may later prove to be, the company is contractually bound to defend the insured....

411 F.Supp. at 440 (citations omitted). *See also Putman v. Insurance Company of North America*, 673 F.Supp. 171, 176 (N.D. Miss.1987), *aff'd*, 845 F.2d 1020 (5th Cir. 1988); *Universal Underwriters Insurance Co. v. American Motorists Insurance Co.*, 541 F.Supp. 755, 762 (N.D.Miss.1982). Also, the same other voice advises that there are situations where "[t]he declaration may fail to state a good case, and yet the insurer be obligated to defend, if the suit 'respects the insurance afforded by the terms of the policy.'" *Womack v. Employers Mutual Liability Insurance Company of Wisconsin*, 233 Miss. 110, 101 So.2d 107, 110 (1958).

Carrom latches onto the allegations of the complaint by emphasizing

> that International's duty to defend ... in this action does not derive solely from the availability of "drop-down" coverage in light of Mission's insolvency. Rather, International's duty to defend this action derives principally from the fact that the underlying Complaint in this action ... demands compensatory damages of $750,000.00, an amount in excess of the primary coverage afforded by Mission. International's duty to defend by virtue of the amount demanded in the Complaint, therefore, is a separate and distinct issue from International's duty to defend by virtue of the "uncollectibility" of the Mission insurance and the availability of "drop-down" coverage under the International policy.

International ventured to defend even groundless, false, or fraudulent suits "[w]ith respect to any occurrence covered by the terms and conditions of this policy, but not covered, as warranted, by the underlying policies listed in Schedule A hereof or not covered by any other underlying insurance collectible by the insured...." The policy does "not apply to defense, investigation, settlement or legal expenses covered by underlying insurance." It fur-

---

*Continental Marble & Granite v. Canal Fire Insurance Co.*, 785 F.2d 1258 (5th Cir.1986); *United States Fire Insurance Company, Inc. v. Charter Financial Group, Inc.*, 851 F.2d 957 (7th Cir.1988); *Zurich Insurance Co. v. Heil Co.*, 815 F.2d 1122 (7th Cir.1987); *Radiator Specialty Co. v. First State Insurance Co.*, 651 F.Supp. 439 (W.D.N.C.1987), *aff'd*, 836 F.2d 193 (4th Cir.

1987); *TXO Production Corp. v. Twin City Fire Insurance Co.*, 685 F.Supp. 156 (E.D.Tex.1988); *Radar v. Duke Transportation Inc.*, 492 So.2d 532 (3d La.Ct.App.1986). These cases mention the amount of premiums as a motivator in the type of risk undertaken. To the extent they use principles of insurance contract interpretation, they support our holding.

ther permits: "Except as provided in Insuring Agreement II (Defense Settlement) or in Condition J (Underlying Insurance) the company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the insured...." Underlying insurance must be exhausted by an occurrence before "the company shall be obliged to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another carrier." Finally,

> [i]n the event of the reduction or exhaustion of the aggregate limits of liability of the underlying policies listed in Schedule A solely by reason of losses paid thereunder in respect of occurrences happening during the policy period of this policy, this policy, (1) in the event of reduction, shall pay the excess of the reduced underlying limits; *or* (2) in the event of exhaustion, shall continue in force as underlying insurance.

## B.

▆ The Fifth Circuit put its discussion of coverage and defense on the same path in *Mission National Insurance Co. v. Duke Transportation Company, Inc.* We quote the text of part B of that decision in full:

> Duke also proffers as a reason for its contention that Mission should have to assume Northwest's obligation to provide primary coverage to and defend Duke that the limits of the underlying policy have been exhausted and that, therefore, under the terms of the Mission policy, Mission's policy continues in force as the underlying insurance. We disagree. The policy provides that: "In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this policy ... shall ...

in the event of exhaustion continue in force as underlying insurance." Duke's argument ignores the phrase "by reason of losses paid thereunder." Duke argues that the underlying policy is exhausted because Northwest is unable to pay any claims under the policy; however, the policy specifically provides that it functions as the underlying insurance only when the exhaustion occurs by reason of losses paid under the policy. Since Duke is not claiming exhaustion due to losses paid under the policy, its argument must fail.

792 F.2d at 553. *See Harville v. Twin City Fire Insurance Co.*, 885 F.2d at 278 nn. 1 and 2 (note 1: "In *Mission*, ... [t]he Court held that 'covered,' as used in the policy meant only that some primary insurance applied, not that it applied and was collectible;" note 2 relies on *Continental Marble & Granite v. Twin City Fire Insurance Co.* as "illustrative of the effect of insolvency on the primary carrier['s duty to defend]" because "even though the proceeds of the primary policy were uncollectible, the primary insurance was not 'inapplicable' ").[11]

It is indeed true that an insurer "acts at its peril when it refuses to defend a suit against its insured." *Travelers Insurance Co. v. General Refrigeration & Appliance Co.*, 218 So.2d 724, 727 (Miss.1969). *See also Martin v. Travelers Indemnity Co.*, 450 F.2d 542, 550 (5th Cir.1971) (refusal to provide defense fraught with risk). But the instant case is not the usual, *Preferred Risk Mutual Insurance Co. v. Poole*, 411 F.Supp. at 440, and we "are not free to extend coverage to risks and circumstances not covered by the insurance contract." *Shelton v. American Insurance Co.*, 507 So.2d 894, 896 (Miss.1987) (citation omitted). The only justification for fastening International with an obligation to defend would be endorsement of the assertion that when relief is requested in a complaint that is beyond the amount of primary coverage, then the underlying insurance is exhausted. This would at the very least stretch the

---

**11.** The one document not before us is the Mission American primary policy. We deem it safe to proceed on the assumption that it covers the February 1, 1984, occurrence at the Oktibbeha County Hospital.

meaning and purpose of the excess policy "beyond the bounds of the use intended within [it]." *Allstate Insurance Co. v. Moulton,* 464 So.2d 507, 510 (Miss.1985). *See also Cassity v. New Orleans Insurance Association,* 65 Miss. 49, 3 So. 138, 139 (1887) ("We cannot, in applying the rule which construes the instrument most strongly against the insurer, close our eyes to the manifest purpose of the clause, and so refine upon language as to defeat the object sought to be accomplished."). A drop down defense is no more warranted than drop down coverage.

## CONCLUSION

There may be occasions when International might assume the position of a covering, defending underlying insurer; Mission American's insolvency is not one of them. An appropriate order shall issue.

## ORDER

This cause is before the court on cross motions for summary judgment by (1) International Insurance Company and (2) Everest & Jennings International and EV-JEN Medical. Pursuant to an opinion filed contemporaneously herewith, it is OR-DERED:

That the motion for summary judgment filed by International Insurance Company is well taken and is sustained;

That the motion for summary judgment filed by Everest & Jennings International and EV-JEN Medical is not well taken and is denied;

That the effect of our ruling is (1) that International Insurance Company is exempt from coverage of the first $500,000.00 of any judgment rendered against Carrom Health Care Products, and (2) International Insurance Company, on the basis of the insolvency of Mission American Insurance Company, is not obligated to defend Carrom Health Care Products.

SO ORDERED.