**Ida U. STOKER, Plaintiff and Appellant,**

v.

**Karl S. STOKER, Defendant
and Respondent.**

**No. 16376.**

Supreme Court of Utah.

Aug. 8, 1980.

Pete N. Vlahos of Vlahos & Knowlton, Ogden, for plaintiff and appellant.

Frank S. Warner of Warner, Marquardt & Hasenyager, Ogden, for defendant and respondent.

MAUGHAN, Justice:

Before us is a judgment of the District Court granting summary judgment in favor of the defendant. Plaintiff's action is for personal injuries alleged to have been intentionally inflicted, and to have been suffered at the hands of defendant, prior to the divorce of the parties.

The only issue presented is whether the doctrine of Interspousal Tort Immunity prevents the trial of this action. We hold, that it does not. The judgment is reversed, and the matter remanded for trial. Costs to appellant. All statutory references are to Utah Code Annotated 1953, unless otherwise indicated.

In *Taylor v. Patten*,[1] this Court held, under our statutes a wife may recover from her husband for intentionally inflicted injuries. However, in the later case of *Rubalcava v. Gisseman, and the Union Pacific Railroad*,[2] this court held the statutes considered in *Taylor v. Patten* did not compel the conclusion tort actions should also be included in the abrogation of immunity, with actions on contracts and property matters. We do not agree.

Prior to the adoption of the Married Women's Acts [3] the common law as it related to the disabilities of married women was, as we find it, in *Commentaries on the Laws of England*, by Sir William Blackstone.[4] In the cited volume at page 290, we find the foundation stone of interspousal immunity:

"III. Having thus shewn how marriages may be made or dissolved, I come now, lastly, to speak of the legal consequences of such making, or dissolution.

"By marriage, the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband; under whose wing, protection, and *cover*, she performs every thing; and is therefore called in our law—french a *feme–covert, foemina viro co-operta*; is said to be *covert–baron*, or under the protection and influence of her husband, her *baron*, or lord; and her con-

---

1. 2 Utah 2d 404, 275 P.2d 696 (1954).

2. 14 Utah 2d 344, 384 P.2d 389 (1963).

3. 41 Am.Jur.2d, Husband and Wife, Sec. 17.

4. Cooley's Blackstone, Volume 1, Book 1, Chapter 15, page 280, et seq. (1879).

dition during her marriage is called her *coverture*. Upon this principle, of an union of person in husband and wife, depend almost all the legal rights, duties, and disabilities, that either of them acquire by the marriage. I speak not at present of the rights of property, but of such as are merely *personal.*  .  .  ." [Footnote omitted.]

In the foregoing we find the disability of coverture arising, because of the unity of husband and wife. Upon marriage the husband and wife became one, thus she could not sue that entity of which she was a part.

This condition is evidenced by other disabilities of coverture as set out in Cooley.

"If the wife be injured in her person or her property, she can bring no action for redress without her husband's concurrence, and in his name, as well as her own: neither can she be sued, without making the husband a defendant. .  ." [5]

The pertinent part of Utah's Married Women's Act as found in 30–2–4, is:

".  .  . *and may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried. There shall be no right of recovery by the husband on account of personal injury or wrong to his wife, or for expenses connected therewith, but the wife may recover against a third person for such injury or wrong as if unmarried,* and such recovery shall include expenses of medical treatment and other expenses paid or assumed by the husband." [Emphasis supplied]

The statute authorizes her to prosecute and defend all actions for the preservation and protection of her rights and property, as if unmarried. It speaks of rights and of property in the disjunctive, and, all actions for the preservation and protection of her rights would certainly include a right to be free from an intentional tort of her husband.

The pertinent statute has been with us since, at least, 1888, and appeared in the revised statutes of 1898; and without alteration has come down to the present. Lending credence to our interpretation of that statute is the fact it was enacted with full knowledge of Article I, Section 11, Constitution of Utah, which is as follows:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."

It was also enacted with full knowledge of Article IV, Section 1, of our Constitution, which is as follows:

"The rights of citizens of the State of Utah to vote and hold office shall not be denied or abridged on account of sex. Both male and female citizens of this State shall enjoy equally all civil, political and religious rights and privileges."

Our Married Women's Act, as has been demonstrated, is in derogation of the common law. As such, attending its construction, is 68–3–2:

The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the statutes of this state. The statutes establish the laws of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed with a view to effect the objects of the statutes and to promote justice. Whenever there is any variance between the rules of equity and the rules of common law in reference to the same matter the rules of equity shall prevail."

To read into our Married Women's Act, a proscription against a wife suing her husband, would be to construe it so strictly as to add a provision which the legislature did not put there.

5. Id., p. 294.

The old common law fiction is not consonant with the realities of today. One of the strengths of the common law was its ability to change to meet changed conditions. Here, the Legislature did not wait for the common law to change, it made the change for it; and did so at a time when a great many of Utah's sister states were enacting, or had previously enacted, Married Women's Acts.[6] Our holding today reaffirms the Legislative abrogation of Interspousal Immunity. That the trend in our sister states is certainly in consonance with our holding today: See 92 A.L.R.3d 901, at p. 923, et seq.

We reaffirm *Taylor v. Patten*,[7] and call attention to the caveat, 2 Utah 2d at page 408, 275 P.2d at page 699. The caveat is as follows:

> "This does not mean that a husband or wife can recover from the other for any unwanted caress, kiss, or other physical contact as sometimes claimed. The marriage relation is created by the consent of both of the parties; inherently within such relationship is the consent of both parties to physical contacts with the other, personal dealings and ways of living which would be unpermitted and in some cases unlawful as between other persons. The essential objects and purposes of marriage such as living together, creating a home and rearing a family are expected and consented to by husband and wife but would be unlawful and in some instances even criminal as between other persons. Under some circumstances such consent might be withdrawn and thereafter would not prevent civil liability occurring, but until that happens the ordinary dealings between husband and wife are with the consent of both and do not create liability between them. However, this does not mean that either husband or wife consents to intentionally inflicted serious personal injuries by the other." [Footnote omitted.]

WILKINS and STEWART, JJ., concur.

CROCKETT, Chief Justice (dissenting).

This decision constitutes an abrupt change in our law which has the potential for far-reaching effects. It is submitted that if there is to be any such diametric change, it should not be by judicial legislation, but by the Legislature, whose prerogative and responsibility it is to fashion and decide upon such policies. At the very least, if there is to be a change by any means, it should have only prospective effect in order to avoid disruptive and unjust impact on contractual obligations and insurance programs which have been entered into based upon the present state of our law.[1]

If there are those who advocate any such substantial change in the law, it is the function and the prerogative of the Legislature, representing the will of the people, to provide a forum for full discussion and consideration of the pros and cons of the problems involved, and to enact into law those policies which, in their judgment, will best serve the common welfare. Whereas, I conceive it to be the duty of the judiciary to adhere to the constitutionally prescribed separation of powers; and not to intrude into the Legislature's prerogative to make the law, but rather, to exercise judicial restraint as to their own desires and ideas as to what the law ought to be, by sustaining and carrying out the law as enacted.[2]

The main opinion purports to base itself on two propositions: our statutory and our decisional law. It is submitted that neither of them support its conclusion and that both now are, and since time immemorial have been, to the contrary. The bases for the

---

6. 41 Am.Jur.2d, Husband and Wife, Sec. 17.

7. Footnote 1, supra.

1. See *Great Northern Ry. Co. v. Sunburst Oil Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), cited in *Rubalcava v. Gisseman*, footnote 2, main opinion.

2. See *Trade Commission v. Skaggs Drug Centers, Inc.*, 21 Utah 431, 446 P.2d 958 (1968); *Stone v. Dept. of Registration*, Utah, 567 P.2d 1115 (1977).

rule against allowing such interfamily suits are set forth in the case of *Rubalcava v. Gisseman.*[3] In order to spare extended discussion here, I refer to the discussion and reasoning in that case as demonstrating that its conclusion now is, and always has been, both the statutory and decisional law of this state.

As explained in that opinion, it is clear beyond doubt that, at common law, neither husband nor wife could sue the other. This arose out of what was anciently considered and continues to be the wise and highly important policy of preserving the solidarity of the family and minimizing antagonisms therein. The passage of time has not changed the vital and important fact that in entering into the marriage contract, the parties exchange vows agreeing to join themselves together in love, loyalty and union with each other, for the purposes of living together as a family unit and of providing for each other's emotional and material needs, including the obligation to support each other.[4] Consequently, whatever of material worth comes to either spouse will benefit the other and the family unit. It follows that, looked at realistically, there cannot be a true adversary proceeding. Whereas, ordinarily, a defendant would be expected to be defensive and resist the claims of a plaintiff, if the latter is his spouse, it would be in the interest of the family unit of which he is a part, for her to prevail.

The evils are not eliminated by the fact that insurance may be involved. In addition to other bad effects, there is the temptation for dishonest collusion with the possible undermining integrity and destroying mutual confidence. And further: the disruptive effects upon existing insurance contracts and programs entered into on the basis of the present law, and the unjust spreading of burdens to other policy holders by necessary increases in insurance premiums.

It is my opinion that one will search in vain in our statutes for any authorization for a wife to sue her husband in a tort claim. Any such right would be found in Title 30, Husband and Wife, which sets out the rights they possess under our law. What rights the wife has are set forth in Sections 30–2–1 through 10. The only ones which could have any bearing on the problem here are Secs. 2, 4 and 6.

Section 2 provides that:

*Contracts may be made by a wife .  .* and enforced by  .   .   . her  .   .   . to the same extent and in the same manner as if she were unmarried.

It is so plain as to hardly justify comment that said Section 2 deals only with *contracts and contract rights* and therefore could not by any stretch of the imagination be regarded as creating a right in the wife to sue her husband in tort.

The only expression in those statutes which makes any mention of the right of a wife to recover for personal injuries is in Sec. 4, which provides that:

A wife may receive the wages for her personal labor  .   .   . and may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried.   .   .   .

And following that authorization, said Section 4 further recites the wife's right of recovery for injury to her person:

There shall be no right of recovery by the husband on account of personal injury or wrong to his wife  .   .   . but the wife may recover *against a third person* for such injury or wrong as if unmarried .   .   .. [All emphasis herein is added.]

It is significant to focus attention upon the fact that, in prescribing the rights the wife has to recover on account of personal injuries, the just-quoted section mentions both husband and wife; and that it authorizes the latter to recovery only "against a third person", pointedly omitting any reference to suing the husband. Equally important and persuasive, it says nothing about authorizing a husband to sue a wife. Under the main opinion's reasoning, this stat-

---

**3.** Footnote 2, main opinion.

**4.** See Secs. 78–45–3 and 78–45–4, U.C.A.1953.

**594**

ute leaves an illogical and unjust hiatus in the law. It could hardly be more obvious than that no such incongruous result was intended; and that the plain meaning and intent is to authorize a suit only against a *third person* and has nothing to do with authorizing a suit against the husband.

Section 6 simply and expressly authorizes both the husband and wife to maintain actions in regard to *the property* of each in the same manner as if unmarried. Similar to the analysis of the other sections just discussed above, it is significant that this section speaks only of *property*; and that it makes no reference to personal injury. Hence, there is no way in which this section could be deemed to authorize a wife to bring such a cause of action against her husband.

To be considered in reference to the statutes just discussed is the universally recognized rule of statutory construction: "expressio unius est exclusio alterius." If the Legislature had intended to create a cause of action, or to recognize the right of a wife to sue her husband in tort, it would and should have done so in those statutes which specifically set forth each of the several rights which the wife does have to bring suits for the protection of her interests, her person, and her property. In the absence of having done so, it is to my mind inescapably clear that there is no such statutory authority for the wife to maintain such a cause of action against her husband.

The main opinion's other fallacy is the reliance placed on the case of *Taylor v. Patten.*[5] According to my analysis, there is no basis in that case for departure from the policy of preserving the harmony of the family. There a decree of divorce had been entered, and the family had thus already disintegrated, so the reasons for protecting its solidarity were not present. It was upon that basis, as pointed out in the concurring opinion, that this writer as the swing vote in a divided court concurred that, in that particular fact situation, where the wrong alleged was an assault by the husband directly upon the wife, and where the consid-

erations favoring the preservation of family harmony no longer existed, the action should proceed to trial. It is submitted that no foundation can be found in that case to justify the present decision in saying "We affirm *Taylor v. Patten.*"

It is upon the basis of what has been said above that it is my conviction that there should be no such abrupt change in our law by judicial decision; if there is to be such change, it should be by the Legislature. This would have the virtues not only of being done in the proper manner, but also by the proper authority. Further, if such a change were made, all affected thereby would be advised as to just what the change is, and when it will be effective, so they could govern their conduct, their contracts and their obligations accordingly.

I would affirm the decision of the district court.

HALL, J., concurs in the dissent of CROCKETT, C. J.

---

5. Footnote 1, main opinion.