STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Plaintiff
and Respondent,

v.

Thomas Layton MASTBAUM and Kathleen Marie Mastbaum, Defendants
and Appellants.

No. 19779.

Supreme Court of Utah.

Dec. 2, 1987.

B.H. Harris and James C. Jenkins, Logan, for defendants and appellants.

Henry E. Heath and Barbara L. Maw, Salt Lake City, for plaintiff and respondent.

HOWE, Justice.

Defendants Thomas Layton Mastbaum and Kathleen Marie Mastbaum, his wife, seek reversal of a summary judgment entered by the trial court in favor of plaintiff State Farm Mutual Automobile Insurance Company.

On May 30, 1981, defendants were involved in an automobile accident near Garden City, Utah. Kathleen Mastbaum, who was seated in the front passenger seat, sustained severe personal injuries. She filed a civil action for damages against her husband, Thomas Mastbaum, the driver of the vehicle, alleging that at the time of the accident, he was under the influence of alcohol and negligently drove into an oncoming vehicle. Thomas had purchased an insurance policy on his vehicle from plaintiff. Plaintiff subsequently brought this action for declaratory judgment that the family exclusion provision in the policy was valid and enforceable, that it was therefore not required to defend Thomas in the civil action brought by his wife, and that plaintiff was not required to pay any judgment she might obtain in her action. The trial court, on motion of plaintiff for summary judgment, awarded plaintiff the relief sought. Defendants bring this appeal.

The policy contained the following family or household exclusion:

THIS INSURANCE DOES NOT APPLY UNDER: (h) COVERAGE A ["Bodily Injury Sustained By Other Persons"], TO BODILY INJURY TO ANY INSURED OR ANY MEMBER OF THE FAMILY OF AN INSURED RESIDING IN THE SAME HOUSEHOLD AS THE INSURED.

While this case was pending on appeal in this Court but before oral argument, we decided *Farmers Insurance Exchange v. Call*, 712 P.2d 231 (Utah 1985). In that case, we held that a household or family exclusion clause in an automobile insurance policy contravenes the statutory requirements found in Utah's No–Fault Insurance

Act, Utah Code Ann. §§ 31–41–1 to –13 (1974, Supp.1985) (now sections 31A–22–306 to –309 (1986)), as to the minimum benefits which must be provided to all persons sustaining personal injuries. We found it unnecessary to address the validity of the exclusion clause with respect to insurance coverage provided by the policy in excess of the statutorily mandated minimums. However, in that case, a majority of this Court allowed recovery on the policy in excess of the statutory minimum amount because the insurer was unable to produce any evidence that the insurance policy had ever been delivered to the insured. In the instant case, that void in the evidence does not exist since it is undisputed that Thomas Mastbaum did receive a copy of the insurance policy at the time it was issued by plaintiff.

The sole question then for our determination in this case is whether the household and family exclusion is valid in the policy issued by plaintiff as to amounts and benefits provided by the policy in excess of those which are statutorily mandated. In a case involving a policy with a somewhat analogous exclusion, *Allstate Insurance Co. v. U.S. Fidelity & Guaranty Co.*, 619 P.2d 329 (Utah 1980), we held that an exclusion of a named driver was unenforceable only to the extent of statutory minimum coverage. In sustaining the exclusion as to policy amounts above the minimum coverage, we said:

> Our decision does not, however, read the named driver exclusionary endorsement out of the contract entirely. Rather, contracting parties are free to limit coverage in excess of the minimum required limits, and the exclusion found in the contract is valid in relation to any coverage exceeding the minimum amounts. Thus, a balance is struck between the necessity of securing minimum automobile liability coverage and the availability of lower premiums because of the exclusion of high insurance risks. This effectuates the express two-fold purpose of the Utah No–Fault Insurance Act which is to require the payment of certain prescribed benefits in respect to motor vehicle acci-

dents while stabilizing the rising costs of automobile accident insurance.

*Allstate Insurance Co.*, 619 P.2d at 333 (footnotes omitted). In so holding, we relied on Utah Code Ann. § 41–12–21(g), which provides:

> Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this act. . . .

We also cited with approval and followed *Estate of Neal v. Farmers Insurance Exchange*, 93 Nev. 348, 566 P.2d 81 (1977).

Two years after our decision in *Allstate Insurance Co. v. U.S. Fidelity & Guaranty Co.*, *supra*, we relied upon its precedence in deciding *Dairyland Insurance Corp. v. Smith*, 646 P.2d 737 (Utah 1982). In that case, an insurer brought suit to void an automobile policy due to material misrepresentations made by the owner of the policy as to who would drive the vehicle. We reversed a trial court ruling that the policy was void *ab initio* and held, on the authority of *Allstate*, that the policy could not be rescinded after the occurrence of an accident to the extent of statutorily required minimum coverage, but could be rescinded as to amounts in excess of the minimum coverage.

The vast majority of cases in which the issue before us has been decided have held that household exclusions or analogous exclusions are enforceable with respect to policy amounts in excess of the statutory minimum required amount. *Estate of Neal v. Farmers Insurance Exchange*, *supra*; *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981); *Arceneaux v. State Farm Mutual Automobile Insurance Co.*, 113 Ariz. 216, 550 P.2d 87 (1976); *Allstate Insurance Co. v. Wyoming Insurance Department*, 672 P.2d 810 (Wyo.1983); *Staser v. Fulton*, 684 S.W.2d 306 (Ky.Ct.App.1984); *Universal Underwriters Insurance Co. v. American Motorists Insurance Co.*, 541 F.Supp. 755 (N.D.Miss.1982) (applying Mississippi law); *Pennsylvania National Mu-*

*tual Casualty Insurance Co. v. Parker*, 282 S.C. 546, 320 S.E.2d 458 (Ct.App.1984); *State Farm Mutual Automobile Insurance Co. v. Nationwide Mutual Insurance Co.*, 307 Md. 631, 516 A.2d 586 (1986). In reaching their decisions, two appellate courts have cited with approval and relied upon our decision in *Allstate Insurance Co. v. U.S. Fidelity & Guaranty Co.*, *supra. See State Farm Mutual Automobile Insurance Co. v. Nationwide Mutual Insurance Co.*, *supra*, *Pennsylvania National Mutual Casualty Insurance Co. v. Parker*, *supra.* Another appellate court, although not citing *Allstate Insurance Co. v. U.S. Fidelity & Guaranty*, employed the same reasoning as we did in *Allstate*, to wit, freedom of contract to limit coverage in excess of the minimum required amounts thereby presumably obtaining a lower premium because of the exclusion of a high risk. *Staser v. Fulton, supra.*

The leading case espousing the minority view that a household exclusion is invalid as to all amounts of the policy is *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984). In that case, the court, after recognizing that there were "two equally compelling arguments," held that because the statutes of that state authorized the writing of insurance policies providing greater coverage than the statutory minimum, there was a legislative intent to avoid inadequate compensation to victims of automobile accidents. A dissenting opinion pointed out that the court's decision was contrary to the majority of appellate courts which have considered this issue and which have adopted the rule that although an insurance policy must comply with statutory requirements, a statute has no effect upon insurance which it does not require. The Court of Appeals of Maryland, in *State Farm Mutual Automobile Insurance Co. v. Nationwide Mutual Insurance Co.*, *supra*, recently had precisely the same issue before it as we do in the instant case. In a well-considered opinion, the court found the majority opinion in *Meyer* to be unpersuasive and stated that while Maryland's compulsory insurance statutes also have the purpose of assuring recovery for innocent victims of motor vehicle accidents, the court did not view that purpose as extending beyond the prescribed statutory minimum coverage so far as the household exclusion was concerned.

We adhere to *Allstate* and the majority view and hold that the household or family exclusion is valid in this state as to insurance provided by an automobile policy in excess of the statutorily mandated amounts and benefits. While the minority view is attractive from the standpoint of an injured victim, the policy must be enforced as written when its provisions do not conflict with our mandatory automobile insurance statutes. The summary judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

HALL, C.J., concurs.

ZIMMERMAN, Justice: (concurring)

As a matter of public policy and in the absence of some legislative statement on the subject, I agree with the majority that household member exclusions should be invalid only up to the limits set by our mandatory automobile insurance statutes. However, Justice Durham's recitation of the legislative history surrounding the 1986 amendment of the relevant statutes does persuade me that with respect to insurance policies written after the effective date of that act, household member exclusions will be entirely invalid because the legislature has now made it clear that such exclusions are contrary to public policy. However, I cannot join Justice Durham in finding that the expression of such an intention in 1986 should be applied to the determination of the validity of a clause contained in a contract written many years earlier and governed by a predecessor statute.

With respect to the adhesion contract arguments made by Justice Durham, I would not reach these since this issue is not adequately presented on appeal.

Inasmuch as there are no grounds for reversing the instant case, I think it unnecessary for us to decide at this juncture whether *Stoker v. Stoker*, 616 P.2d 590 (Utah 1980), abrogated interspousal immu-

nity with respect to actions grounded in negligence as well as those grounded in intentional torts.

STEWART, Associate C.J., concurs in the concurring opinion of Justice ZIMMERMAN.

DURHAM, Justice: (dissenting)

I cannot agree with the majority opinion's reasoning or result because it fails to address the viability of the household exclusion under public policy as reflected in Utah's automobile insurance statutes, the applicability of adhesion contract principles, and the question of interspousal tort immunity.

I would reverse the summary judgment and enter judgment in favor of defendant on public policy grounds. On adhesion contract principles alone, I would reverse and remand this case for further evidentiary proceedings. Nor do I believe that interspousal tort immunity is a barrier to litigation between the Mastbaums.

## I

### Public Policy Considerations

The majority errs in assuming that the state legislature intended to allow a household exclusion for coverage beyond the statutory minimum. The legislative history on this question suggests that the legislature does not support the household exclusion, but instead considers it to be contrary to public policy.

The legislature recodified Utah's insurance laws in its 1985 and 1986 sessions. The 1986 session placed all changes to the state insurance laws into Senate Bill 91. Two sections in particular are relevant to this discussion: first, Utah Code Ann. § 31A-22-303 (motor vehicle liability coverage), which generally describes motor vehicle liability coverage required under the statutory scheme, and second, section 31A-22-309 (limitations, exclusions, and conditions to personal injury protection), which describes the allowable exclusions for personal injury protection coverage in automobile insurance policies. Prior to the passage of Senate Bill 91, which was effective July 1, 1986, subsection 2 of section 31A-22-309 read as follows:

(2) Any insurer *may exclude* benefits:

(a)(i) for any injury sustained by the injured while occupying another motor vehicle owned by the insured and not insured under the policy; or

(ii) for any injury sustained by any person while operating the insured motor vehicle without the express or implied consent of the insured or while not in lawful possession of the insured motor vehicle.

(b) to any injured person, if the person's conduct contributed to his injury. . . .

Utah Code Ann. § 31A-22-309 (1985 Insurance Code Recodification pamphlet edition) (emphasis added).

This section designates the exclusions an insurer "may" attach to a policy providing personal injury protection coverage under Utah state laws. It does not specify that these exclusions are allowable only for amounts below the statutory minimum, but indicates that an insurer may only exclude benefits in those few and narrow situations.

That such was the legislature's intention before the 1986 recodification is suggested by the history of Senate Bill 91, which amended section 31A-22-309 to read:

(2)(a) Any insurer issuing personal injury protection coverage under this part may *only* exclude from this coverage benefits:

(i) for any injury sustained by the injured while occupying another motor vehicle owned by the insured and not insured under the policy;

(ii) for any injury sustained by any person while operating the insured motor vehicle without the express or implied consent of the insured or while not in lawful possession of the insured motor vehicle; or

(iii) to any injured person, if the person's conduct contributed to his injury:

(A) by intentionally causing injury to himself; or

(B) while committing a felony.

Utah Code Ann. § 31A–22–309 (1986) (emphasis added).

The legislature thus removed any ambiguity about the validity of exclusions not specifically mentioned in section 31A–22–309. Insurers may only exclude coverage for the designated reasons. The household exclusion is not among those. It is not unreasonable to infer that the legislature always intended household exclusion clauses, and others not mentioned in section 31A–22–309, to be invalid and made the foregoing change to eliminate the argument that they were permissible beyond the statutory minimum because they were not explicitly excluded.

This interpretation of the automobile insurance statutory scheme is bolstered by the record of the state senate's consideration of a proposed amendment in Senate Bill 91 to section 31A–22–303. Senate Bill 91 contained a large number of amendments to Utah's insurance laws. The majority of these amendments were suggested to the legislature by the Insurance Code Task Force, which was comprised primarily of representatives of the insurance industry, as well as several members of the state legislature. The task force minutes from January 10, 1986, reflect that the draft version of Senate Bill 91 was changed to add an additional clause to section 31A–22–303. That clause was to be inserted as subsection (d) under subsection (3), and the subsection was then to read as follows:

(3) Motor vehicle liability coverage need not insure any liability:

(a) under any workers compensation law under Title 35;

(b) resulting from bodily injury to or death of an employee of the named insured, other than a domestic employee, while engaged in the employment of the insured, or while engaged in the operation, maintenance, or repair of a designated vehicle;

(c) resulting from damage to property owned by, rented to, bailed to, or transported by the insured; or

(d) *resulting from bodily injury or death of any insured or any member of an insured's family residing in the insured's household.*

Utah S.B. 91, 46th Leg. draft version 1–06–86, at 319–20 (emphasis added).

Thus, when presented to the senate for consideration in January 1986, Senate Bill 91 explicitly allowed insurers to exclude household members from coverage under automobile liability policies. This version of the bill apparently remained unchallenged until February 24, 1986. On that date, Senator Hillyard moved to amend Senate Bill 91 to delete the clause allowing the household exclusion from section 31A–22–303(3) because the legislature had not properly considered the exclusion's extensive impact.

In arguing to delete the pertinent language, Senator Hillyard pointed out the unfair and adhesive nature of this type of exclusion. He stated, "What you're going to do is end up with people with exposure who think they have insurance to cover them, but by this exclusion, they're not going to have any insurance." Senator Hillyard then requested the senate membership to "vote affirmatively to remove this [household exclusion] and let it be put in later if that's the decision of the legislature through legislative intent."

A member of the task force told the senate membership that the task force itself had fully considered the household exclusion question and felt that it was appropriate and based on sound public policy. Nonetheless, the senate voted to approve Senator Hillyard's amendment, thereby deleting the language allowing a household exclusion in liability policies. This process, combined with the straight-forward language in section 31A–22–309, suggests that the legislature has never intended to permit household exclusion clauses. Thus, the majority opinion's premise regarding legislative intent is at least open to question.

In *Farmers Insurance Exchange v. Call*, 712 P.2d 231 (Utah 1985), we noted that a number of jurisdictions had found that the household exclusion clause violated public policy, even for coverage exceeding that mandated by statute. *Id.* at 236 n. 2; *see, e.g., Meyer v. State Farm Mutual*

*Automobile Insurance, Co.,* 689 P.2d 585, 592 (Colo.1984). At that time, however, we declined to address the question presented by this appeal. *Call,* 712 P.2d at 236. In light of the legislative history of permissible exclusions under Utah's automobile insurance statutes and the language of the statutes themselves, I would find the household exclusion void in all cases. Accordingly, I would reverse the judgment of the trial court and enter judgment in appellants' favor.

## II

### *Adhesion Contract Theory*

The majority opinion states that the primary issue is whether the household exclusion is valid as to amounts in excess of those which are statutorily mandated and relies on the principle of freedom of contract to permit the extension of the household exclusion to coverage beyond the statutory minimums. This approach fails to address adhesion contract theory, raised by appellants in the trial court and on appeal. Aside from public policy considerations, the adhesion issue is sufficient by itself to reverse and remand the trial court's decision.

Appellants relied on the adhesion contract theory in the trial court and specifically requested the court to resolve that issue. The court refused to do so, but instead noted that the insurance contract was "valid," implying that the adhesion theory was inapplicable. Before this Court, appellants cite several cases from other states dealing with the household exclusion and argue that appellants' reasonable expectations were not met. Thus, the issue is properly before this Court and should be treated.

As this Court recently noted, "Like credit life and disability insurance, automobile insurance is generally sold through adhesion contracts that are not negotiated at arm's length. Purchasers commonly rely on the assumption that they are fully covered by the insurance that they buy." *Farmers Insurance Exchange v. Call,* 712 P.2d at 236 (Utah 1985). In fact, this Court has examined a number of contracts in light of adhesion theory with varying results. *See, e.g., Resource Management Co. v. Weston*

*Ranch and Livestock Co.,* 706 P.2d 1028, 1040–49 (Utah 1985) (contract terms not unconscionable and contract not one of adhesion); *System Concepts, Inc. v. Dixon,* 669 P.2d 421, 429 (Utah 1983) (no disparate bargaining status between parties); *General Motors Acceptance Corp. v. Martinez,* 668 P.2d 498, 501 (Utah 1983) (adhesive nature of insurance policy is basis of duty to notify); *White v. Fox,* 665 P.2d 1297, 1300 (Utah 1983) (contract not adhesive; parties' bargaining status was equivalent); *Bekins Bar V Ranch v. Huth,* 664 P.2d 455, 459–64 (Utah 1983) (finance charges in loan agreement not unconscionable).

In the leading case of *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 419 P.2d 168, 54 Cal.Rptr. 104 (1966), Justice Tobriner of the California Supreme Court set forth the principle of reasonable expectations in adhesion insurance contracts.

> Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect.

65 Cal.2d at 269–70, 419 P.2d at 171–72, 54 Cal.Rptr. at 107–08.

Judicial determination of the insured's reasonable expectations does not necessarily depend upon the presence of an ambiguity in the policy. *See, e.g., Powers v. Detroit Automobile Inter-insurance Exchange,* 427 Mich. 602, 632 n. 8, 398 N.W. 2d 411, 424 n. 8 (1986); *Stordahl v. Government Employees Insurance Co.,* 564 P.2d 63, 65–66 (Alaska 1977). Indeed, the insured's complete failure to read the policy's provisions, exclusions, or limitations may not be determinative of his reasonable expectations unless the insurer can demonstrate that the failure to read was unreasonable. Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 Harv.L.Rev. 961, 967–68 (1970);

*see Hawaiian Insurance and Guaranty Co. v. Brooks,* 67 Hawaii 285, 686 P.2d 23 (1984); *Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 810 n. 3, 640 P.2d 764, 769 n. 3, 180 Cal.Rptr. 628, 633 n. 3 (1982).

At least one state has used the adhesion contract theory to invalidate a household exclusion clause in an automobile insurance policy. In *Transamerica Insurance Co. v. Royle,* 202 Mont. 173, 656 P.2d 820 (1983), the Supreme Court of Montana considered the case of a mother who had negligently caused an automobile accident in which her daughter, a passenger in the mother's car, was seriously injured. The insurance policy covering the automobile contained a household exclusion that denied coverage for injuries incurred by a person living or residing in the insured's household at the time of loss. After determining that parent-child immunity did not present a barrier to the daughter's suit, the Montana Supreme Court concluded:

> [W]e hold that the household exclusion clause is invalid due to its failure to "honor the reasonable expectations" of the purchaser of the policy.... "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."

*Royle,* 656 P.2d at 824 (quoting Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 Harv.L.Rev. 961, 967 (1970)).

The importance of considering adhesion theory in this case is obvious. The majority opinion's reliance on the principle of freedom of contract between the parties is misplaced if the insurance policy is adhesive in nature because the parties' ability to freely contract is largely illusory where adhesion theory applies. The Supreme Court of New Mexico in *Estep v. State Farm Mutual Automobile Insurance Co.,* 103 N.M. 105, 703 P.2d 882 (1985), noted:

> With respect to the freedom of contract argument, we suggest, as did the court in the second case of *Mutual of Enumclaw Insurance Co. v. Wiscomb,* 97 Wash.2d 203, 211, 643 P.2d 441, 445 (1982), that to say there is freedom of contract regarding inclusion or exclusion of coverage for family members in these cases "is to ignore reality." The discussion in *Wiscomb* of the "take-it-or-leave-it" nature of obtaining automobile liability coverage, and the effect of the policy's exclusion on third parties who are or may be ignorant of the insurance arrangements and unable or incompetent to contract for coverage for themselves, illustrates the fragility of any assertion that the terms of this or similar insurance policies truly are the product of conscious bargaining between the parties. The argument might be more credibly made were there evidence that insureds had been, or traditionally are, offered the choice of including or excluding coverage for family members. There is no such evidence in this record.

103 N.M. at 109–10, 703 P.2d at 886–87. Absent findings of fact regarding the reasonable expectations of the parties, the course of negotiations between them, and the circumstances existing when the contract was made, it is impossible to conclude, as does the majority opinion, that the contract terms were arrived at freely in this case.

When reviewing motions for summary judgment, this Court views issues of fact in the light most favorable to the party opposing summary judgment. *Call,* 712 P.2d at 237; *Mountain States Telephone & Telegraph Co. v. Atkin, Wright & Miles, Chartered,* 681 P.2d 1258, 1261 (Utah 1984). The parties' failure to include a copy of the insurance policy in the record and the lack of evidence directed to the adhesion claims make it necessary to remand this case to the trial court. Thomas Mastbaum did state in his affidavit that he was unable to read or review the text of the insurance policy before he purchased it, that he was unaware of the household exclusion clause, and that he assumed the insurance policy covered all parties, including his wife, for any injuries sustained in an automobile accident involving his vehicle. However, in the absence of the policy itself and without a more complete de-

scription of the nature of the negotiations and circumstances surrounding the contract's formation, there is too much uncertainty and too little evidence from which to draw a conclusion regarding the Mastbaums' reasonable expectations. Hence, apart from questions of public policy, this action should be remanded to the trial court to complete the record regarding appellants' claims of adhesion.

### III

*Interspousal Tort Immunity*

Finally, I dissent from the majority opinion because it completely omits reference to the doctrine of interspousal tort immunity, which was extensively briefed and relied upon by the parties on appeal. This Court thoroughly discussed the doctrine of interspousal tort immunity in *Stoker v. Stoker*, 616 P.2d 590 (Utah 1980). In reaching a decision to repudiate the doctrine of interspousal tort immunity, this Court relied upon Utah Code Ann. § 30–2–4 (1974), which states in pertinent part that a married woman "may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried." The Court also pointed out that the statute was enacted in derogation of the common law and must therefore be liberally construed in order to meet its purpose and to promote justice. *Id.* at 591; Utah Code Ann. § 68–3–2 (1986). The Court in *Stoker* emphasized the broad scope of its analysis by proclaiming, "Our holding today reaffirms the Legislative abrogation of Interspousal Immunity."[1] *Id.* at 592.

This Court has also rejected the notion that the potential for collusion is a sufficient rationale for prohibiting certain kinds of litigation. *See Malan v. Lewis*, 693 P.2d 661, 674 (Utah 1984); *Call*, 712 P.2d at 235–36. As this Court stated in *Call:*

> Furthermore, we are not persuaded that the collusion rationale that the Court re-

lied upon in the *Kay* [*State Farm Mutual Auto Insurance Co. v. Kay*, 26 Utah 2d 195, 487 P.2d 852 (1972); *Kay v. Kay*, 30 Utah 2d 94, 513 P.2d 1372 (1973)] opinions remains an adequate justification for the household exclusion clause. In *Malan v. Lewis*, Utah, 693 P.2d 661, 674 (1984), this Court determined that the Utah Guest Statute is unconstitutional and found the collusion rationale to be insufficient to deny coverage to innocent guest passengers injured in automobile accidents. In addition, the risk of collusion in intrafamily litigation has never been accepted by this Court as grounds for endorsing the parent-child immunity doctrine, which has likewise never been established by the legislature.

*Call*, 712 P.2d at 235. The Court in *Call* also agreed with the Kansas Supreme Court, which pointed out that "the possibility of collusion exists to a certain extent in any case. Everyday [sic] we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task." *Id.* at 235 (quoting *Nocktonick v. Nocktonick*, 227 Kan. 758, 768–69, 611 P.2d 135, 142 (1980)). Interspousal tort immunity would therefore not be a barrier to Kathleen Mastbaum's efforts to recover from her husband.

For the reasons set forth above, I would reverse and enter judgment in favor of appellants on public policy grounds. Apart from questions of public policy, however, I would still reverse and remand to the lower court for further evidentiary proceedings. In either instance, the doctrine of interspousal tort immunity would not pose a barrier to proceedings between the Mastbaums.

---

1. This interpretation is consistent with the "open courts" provision of the Utah Constitution article I, section 11, which states:

   All courts shall be open, and every person, for an injury done to him and his person, property, reputation, shall have remedy by due

course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause for which he is a party.