V. Glen NOBLE, Plaintiff
and Appellant,

v.

Elaine Hanson NOBLE, Defendant
and Appellee.

Elaine Hanson NOBLE, Plaintiff
and Appellant,

v.

V. Glen NOBLE, Defendant
and Appellee.

Nos. 19934, 20401.

Supreme Court of Utah.

Aug. 15, 1988.

Jackson B. Howard, Provo, Raymond M. Berry, Kent M. Kasting, Salt Lake City, for V. Glen Noble.

W. Eugene Hansen, Salt Lake City, for Elaine Hanson Noble.

ZIMMERMAN, Justice:

In this decision, we dispose of two consolidated appeals. The first arises from a divorce action between Elaine Noble and Glen Noble in which a divorce decree was granted to Elaine. Glen seeks to modify the alimony award and property division. We affirm the decree but remand for additional findings. The second appeal arises from the summary judgment dismissing Elaine's separately filed tort action against Glen based upon his having shot her. Elaine seeks a reversal of the order of dismissal. We reverse the summary judgment and reinstate her intentional tort claims.

Elaine and Glen were married in July of 1977, when Elaine was thirty-four years old and Glen was fifty-eight. This was the second marriage for each, and no children were born of the marriage. On August 18, 1980, while Elaine was lying on their bed, Glen shot her in the head at close range with a .22 caliber rifle.[1] He then attempted to commit suicide by shooting himself under the chin with the same rifle. Approximately seven months later, Glen initiated a divorce action in the Fourth Judicial District. That case was assigned to Judge Tibbs, sitting by special appointment. Elaine counterclaimed for divorce on grounds that Glen had physically abused her, leaving her unable to work. Elaine later filed a personal injury action against Glen. That case was assigned to Judge Ballif in the Fourth Judicial District. Elaine asserted claims based on negligence, battery, and intentional infliction of emotional distress. In April of 1983, Judge Ballif entered partial summary judgment for Glen, ruling that Elaine's negligence claim was barred by the doctrine of interspousal immunity. Elaine filed a notice of intent to appeal the dismissal of her negligence claim and continued to pursue the intentional tort claims.

The divorce action was tried before Judge Tibbs on December 22, 1983, and a divorce decree in Elaine's favor was entered. In fixing the alimony and the property division, Judge Tibbs expressly took into account Elaine's increased living expenses and decreased earning ability resulting from the disabilities caused by the shooting.

Glen then brought a motion for summary judgment in the tort action pending before Judge Ballif, arguing that Elaine's intentional tort claims had, in effect, been decided in the divorce action because the alimony and property awards were to some extent intended to compensate for the shooting injuries. Judge Ballif agreed and, relying on the doctrine of res judicata, dismissed Elaine's tort action in its entirety.

---

1. Glen was tried and acquitted by a jury of attempted murder. Neither party argues that the outcome of that criminal action has any bearing on the divorce and tort claims.

Glen appeals from the divorce decree. Elaine appeals from the summary judgment dismissing her tort claims. We will discuss the two appeals separately, considering first the challenge to the divorce decree and then the attack on the dismissal of the tort action. At the outset, we emphasize that the issues in these appeals probably would not have arisen and the resolution of both cases would have been greatly expedited had the tort case been tried before the divorce action. As a general rule, that is how such cases should be handled, and it is the course of action that should have been followed here.[2]

## I. The Divorce Action

In the divorce decree, Judge Tibbs awarded Elaine alimony of $750 per month, the house she brought into the marriage, a $264,000 share of the approximately $800,000 in assets that Glen brought to the marriage, and $10,000 in attorney fees.[3]

■ Glen's first argument is that Judge Tibbs improperly considered Elaine's tort claims in the divorce action. We held in *Walther v. Walther*, 709 P.2d 387, 388 (Utah 1985), that it is improper to try a tort claim, as such, within a divorce action. *Accord Lord v. Shaw*, 665 P.2d 1288, 1291 (Utah 1983). Tort claims, which are legal in nature, should be kept separate from divorce actions, which are equitable in nature. As a practical matter, if spouses have tort claims pending against each other which are likely to have a bearing on the outcome of the divorce action, those claims should be resolved prior to the divorce proceedings.[4]

■ In this case, Glen contends that Judge Tibbs combined the two proceedings and used the property division and alimony award as a means of giving Elaine damages properly attributable to her tort claims. The record does not support this contention. Judge Tibbs was fully informed that the tort claims were being tried in a separate action before Judge Ballif. For that reason, Judge Tibbs stated in his findings and conclusions that he had avoided consideration of the merits of the tort claims *qua* tort claims, and our review of the record provides us with no cause to dispute that assertion. It is true that some of the facts relevant to the tort claims were considered in the divorce proceeding, including Elaine's medical and living expenses incurred as a result of the shooting, as well as Glen's role in causing her injuries. However, it was not improper to take those factors into account in the context of the divorce action. As we explained in *Walther*, 709 P.2d at 388 (citing *Anderson v. Anderson*, 104 Utah 104, 109, 138 P.2d 252, 254 (1943)), "[I]njuries and attendant medical expenses [caused by a spouse's tort] may be considered" in deciding the level of need of the other spouse in a divorce proceeding. And because Elaine's counterclaim for divorce was based on Glen's cruelty to her, it was proper for Judge Tibbs to consider the issue of Glen's fault in causing those injuries. Merely because Judge Tibbs considered facts relevant to the divorce action that were also relevant to the tort action does not mean that he impermissibly adjudicated the tort claims in the divorce action.

**2.** Although that course of action was considered, it was not followed for reasons that are not entirely clear.

**3.** Glen now challenges the award of attorney fees. However, he raises this issue for the first time in his reply brief, contrary to rule 24(c), Rules of the Utah Supreme Court (formerly entitled Utah Rule of Appellate Procedure 24(c)). And he provides no reasoning or authority to support this claim of error. Therefore, we deem any error to have been waived. *See Romrell v. Zions First Nat'l Bank*, 611 P.2d 392, 395 (Utah 1980).

**4.** To do otherwise may raise significant concerns if a fact question with respect to which a party has requested a jury and is entitled to a jury verdict is first decided by a judge in an equitable proceeding. *Cf. Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–957, 3 L.Ed.2d 988 (1959) (the federal constitutional right to a jury trial of legal issues may be lost through prior judicial determination of equitable claims only in the most imperative circumstances). However, those concerns have not been raised by the parties to this case.

Glen's second argument, which is something of a variation on the theme of the first, is that Judge Tibbs abused his discretion in setting the amount of the alimony award and in dividing the property. He contends that the award and distribution were unjustifiably generous to Elaine, particularly in light of the short duration of the marriage, and that the only explanation for this generosity is an intent to punish Glen for the shooting and to compensate Elaine for her injuries.

■ We first address Glen's challenge to the $750–per–month alimony award. We accord trial courts broad discretion in awarding alimony so long as the trial court exercises its discretion "in accordance with the standards that have been set by this Court." *Jones v. Jones,* 700 P.2d 1072, 1074 (Utah 1985). We require that a trial court, in setting alimony, attempt to provide support for the receiving spouse sufficient to maintain that spouse as nearly as possible at the standard of living enjoyed during the marriage. In determining the amount of the award necessary to accomplish this aim, the trial court must make adequate findings and conclusions demonstrating that it has considered three factors: (i) the financial condition and needs of the party seeking alimony, (ii) that party's ability to produce a sufficient income, and (iii) the ability of the other party to provide support. *Davis v. Davis,* 749 P.2d 647, 649 (Utah 1988); *Jones v. Jones,* 700 P.2d at 1074–75; *see* Utah Code Ann. § 30–3–5 (1984 & Supp.1988). In weighing those three factors, it is entirely appropriate for the trial court to take into account whether physical or mental disabilities arising during the marriage, regardless of their cause, have made the receiving party's needs greater or reduced that party's ability to produce an income. The fact that such disabilities may have resulted from the tortious acts of another, including the divorcing spouse, certainly does not preclude the trial court from considering those disabilities. We said as much in *Walther,* 709 P.2d at 388.

■ Applying those rules to this case, the disabilities Elaine suffered as a result of her injuries at Glen's hands were an important consideration in assessing the first two *Jones* factors—Elaine's financial condition and needs and her ability to produce an income. Judge Tibbs specifically found that Elaine had suffered permanent injuries which left her unemployable, unable to operate a motor vehicle, and "totally and permanently disabled." Evidence was presented that as a result, Elaine needed approximately $2,600 per month to meet her expenses. Glen has not challenged those findings of fact. Applying the third *Jones* factor, Glen's ability to provide support, the court found that Glen's present income was insufficient to provide for his needs and still meet Elaine's needs. It set alimony at only $750 per month, but also considered its finding of Elaine's need for much higher alimony when it fixed the property division, as will be discussed below.

Judge Tibbs made the required findings and conclusions demonstrating his consideration of the *Jones* factors. He quite properly took into account Elaine's needs and disabilities resulting from her injuries. By no stretch of the imagination could the $750–per–month award be deemed excessive, and we reject Glen's challenge to the award as meritless.

We next consider Glen's challenge to the property division. This is a variation on the argument advanced regarding the alimony award. After finding that Elaine needed $2,600 per month for expenses and was unemployable and that Glen could afford only $750 per month in alimony, the judge also found that because of the difference in the parties' ages, Elaine could be expected to outlive Glen by some twenty-five years, years during which she would be without alimony and otherwise unable to earn an income. In light of these circumstances, the court made what it termed an "unusual order" awarding Elaine $264,000 of Glen's assets as a means of supplementing the clearly inadequate alimony award

and ensuring that Elaine would have a source of support in the future. Before this Court, Glen argues that in making this division Judge Tibbs improperly considered the needs that resulted from Elaine's injuries. He contends that it was error to give her property she did not bring into the marriage and that she should have received only her house and personal effects.

■ We do not lightly disturb a trial court's division of property in a divorce decree and will uphold a division made in accordance with the standards we have set and in the exercise of the trial court's discretion "except where to do so would work a manifest injustice or inequity." *Pusey v. Pusey*, 728 P.2d 117, 119 (Utah 1986); *Savage v. Savage*, 658 P.2d 1201, 1203 (Utah 1983) (quoting *Turner v. Turner*, 649 P.2d 6, 8 (Utah 1982)). The overarching aim of a property division, and of the decree of which it and the alimony award are subsidiary parts, is to achieve a fair, just, and equitable result between the parties. *See Fletcher v. Fletcher*, 615 P.2d 1218, 1222 (Utah 1980); Utah Code Ann. § 30–3–5 (1984 & Supp.1988). Stated more specifically, the purpose of property divisions is to allocate property in the manner which "best serves the needs of the parties and best permits them to pursue their separate lives." *Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987); *Jones v. Jones*, 700 P.2d at 1074–75. Given this purpose, it is entirely proper for a trial court making a property division to consider all the needs of each spouse, regardless of the cause of the disabilities that give rise to those needs. And, contrary to Glen's contention, there is no *per se* ban on awarding one spouse a portion of the premarital assets of another. In fact, our cases have consistently held that under appropriate circumstances, achieving a fair, just, and equitable result may require that the trial court exercise its discretion to award one spouse the premarital property of the other. *E.g., Burke*, 733 P.2d at 135 (citing *Workman v. Workman*, 652 P.2d 931, 933 (Utah 1982)).

The question then is whether Judge Tibbs abused his discretion in making the property division when he took account of Elaine's need for present and future support and Glen's inability to provide sufficient alimony. We recently explained in *Newmeyer v. Newmeyer*, 745 P.2d 1276, 1279 n. 1 (Utah 1987), that the issues of alimony and property division are not entirely separable.

[N]either the trial court nor this Court considers the property division in a vacuum. The amount of alimony awarded and the relative earning capabilities of the parties are also relevant, because the relative abilities of the spouses to support themselves after the divorce are pertinent to an equitable determination of the division of the fixed assets of the marriage.

*Id.; see Searle v. Searle*, 522 P.2d 697, 699–700 (Utah 1974). The gross inadequacy of the alimony available to provide for Elaine's needs, the paucity of her separate premarital property, and Glen's relative wealth all warranted Judge Tibbs' awarding Elaine a substantial portion of Glen's premarital property. We cannot say that the amount awarded was excessive under the circumstances.

■ Finally, Glen argues that if the divorce decree is allowed to stand and Elaine is successful in her tort action, she might receive double compensation for her injuries. We agree that to the extent that the divorce decree has taken account of disabilities resulting from her injuries by awarding her more alimony or property than she would have received but for the injuries, she should not be compensated for those disabilities again through special damages in tort. In its present form, the divorce decree does not specify to what precise extent the alimony and property awards are based on needs or disabilities arising from the shooting which could also be the basis for special damages in tort, such as lost earning ability and medical expenses. Therefore, we remand the divorce case to Judge Tibbs with instructions that he make findings of sufficient specificity to enable Judge Ballif to avoid duplicate compensa-

tion in the tort action. The divorce decree is affirmed in all other respects.

## II. The Tort Actions

Elaine appeals from Judge Ballif's decision dismissing her intentional tort claims on the basis of the claim preclusion branch of the doctrine of res judicata.[5] And she argues that if she is allowed to proceed with that action, Glen should be bound under the issue preclusion branch of res judicata by the divorce court's specific finding that he intentionally shot Elaine.

■ Neither of these arguments requires extensive analysis. The rules of res judicata and the records in both of these cases fully support Elaine's position. Judge Ballif ruled that Elaine's intentional tort claims had been litigated and determined in the earlier divorce action and were therefore barred under the rules of claim preclusion. In *Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 875 (Utah 1983), we explained that claim preclusion applies only to claims that actually were or could and should have been litigated in the prior action. Tort claims *qua* tort claims should not be tried as part of a divorce action, *Walther v. Walther,* 709 P.2d at 388, and the record shows that Elaine's tort claims, as such, were not tried. Therefore, claim preclusion does not bar Elaine from proceeding on her intentional tort claims and

recovering damages. Once proper findings have been made by Judge Tibbs with respect to the specific elements of loss or injury considered in making the alimony and property awards, it will be a simple matter for Judge Ballif to structure the tort case so as to avoid duplicate compensation. The claim preclusion ruling was error, and we reverse the grant of summary judgment and remand for further proceedings on the claims of battery and intentional infliction of emotional distress.

■ Elaine argues that on remand of the tort case, Glen should be precluded from relitigating the specific finding made in the divorce action that he intentionally shot her.[6] In *Searle Bros. v. Searle,* 588 P.2d 689, 691 (Utah 1978), we reviewed the rules of issue preclusion and listed the elements generally accepted to be required if the determination of an issue in a preceding case is to bind the parties in a later case: (i) the issues must be identical, (ii) the judgment must be final, (iii) the party estopped must be a party or in privity with a party to the preceding adjudication, and (iv) the issue must have been competently, fully, and fairly litigated. In this case, the parties only dispute whether the second and fourth elements have been satisfied.

There is no merit in Glen's lack-of-finality claim, at least at this point. Although he appealed from the divorce decree, Glen did not challenge the specific finding of

---

**5.** The doctrine of res judicata has two branches, claim preclusion and issue preclusion. As the United States Supreme Court has noted, there has been a great deal of confusion with respect to the "varying and, at times, seemingly conflicting terminology" used in discussing the doctrine and its two branches. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). Much confusion has resulted from the use of the term "res judicata" to refer to either claim preclusion alone or to the overall doctrine, incorporating both claim and issue preclusion. To avoid engendering further confusion, we will use "res judicata" to refer to the overall doctrine of the preclusive effects to be given prior judgments. We will use the term "claim preclusion" to refer to the branch which has often been referred to as "res judicata" or "merger and bar." And we use the term "issue preclusion" to refer to the branch often termed "collateral es-

toppel." See the discussions in *Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 874–75 (Utah 1983), *Mel Trimble Real Estate v. Monte Vista Ranch, Inc.,* 86 Utah Adv.Rep. 29, 30 (Utah App. 1988), and *Lane v. Honeywell, Inc.,* 663 F.Supp. 370, 371 n. 1, 372 & n. 2 (D.Utah 1987). *See generally* F. James & G. Hazard, *Civil Procedure* § 11.3 (3d ed. 1985); C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4402 (1981).

**6.** Finding No. eight in the divorce proceeding reads: "On the late night of the 18th of August 1980, plaintiff intentionally and willfully and without just cause, shot the defendant Elaine Hans[o]n Noble, in the head with a .22 caliber rifle, thereby causing severe bodily injury to the defendant."

liability for the shooting. At any rate, our affirmance of the decree disposes of the finality issue.

 Glen's second argument, that the issue was not fully and fairly litigated because it was not essential to the divorce decree, is entirely contrary to the record, and we reject it as meritless. Section 30–3–1(3)(g) of the Code provides that cruel treatment causing bodily injury is grounds for divorce. Utah Code Ann. § 30–3–1(3)(g) (Supp.1988) (formerly codified at Utah Code Ann. § 30–3–1(7) (1984)). Elaine's counterclaim for divorce was based on Glen's cruelty to her. The issue of liability for the shooting was raised in the pleadings, was fully and fairly litigated, and was expressly made the basis for granting Elaine's counterclaim for divorce. Throughout the divorce proceeding, Glen was repeatedly put on notice that issue preclusion would be asserted against him in the tort case. As Glen's own memorandum urging the trial court to dismiss on grounds of claim preclusion accurately explained, "The key issue to the present tort action—whether or not an *intentional* tort was committed [—] was *in fact* litigated in the divorce action.... It cannot be disputed that a dominant issue in the divorce action between these parties was whether an intentional shooting took place." The policies behind the doctrine of res judicata would be ill-served by allowing Glen to force Elaine to retry this issue.

We have considered the remaining arguments and find them to be without merit. The divorce decree is remanded for further findings but affirmed in all respects. The summary judgment dismissing Elaine's intentional tort claims is reversed, and those claims are remanded for further proceedings in which Glen will be bound by the previous finding of liability for intentionally shooting Elaine.[7] After general and special damages have been set, the trial court is instructed to offset that portion of special damages provided for in the divorce decree, as shown by the revised findings to be made by Judge Tibbs. Costs on both appeals are awarded to Elaine.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

---

7. Elaine has also appealed from Judge Ballif's ruling that her negligence claim was barred by the doctrine of interspousal immunity. She argues that the partial summary judgment was in error because the common law doctrine was held to have been abrogated as to negligence actions in *Stoker v. Stoker,* 616 P.2d 590 (Utah 1980). In *Stoker,* this Court held that the doctrine had been abrogated with respect to intentional torts. *Id.* at 590, 592. We have never had occasion to decide whether.this abrogation extended to negligence claims, and we do not do so in this case. It is unnecessary for us to reach that question because our disposition of Elaine's intentional tort action makes it a certainty that she will have a remedy for her injuries.